DONALD RAY WILLIAMS, Plaintiff-Appellee, v. LAWSON & LAWSON TOWING COMPANY, Defendant-Appellant.

Fifth District   No. 5—86—0737

Opinion filed July 20, 1987.

Gary Mayes and Bruce E. Beard, both of Thompson & Mitchell, of Belleville, for appellant.

Victor J. Mosele, of Pratt & Callis, P.C., of East Alton, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

The circuit court of Madison County denied the motion of defendant, Lawson & Lawson Towing Company, which appeared specially under section 2—301 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—301) and moved to quash service of summons in plaintiff's action to recover damages for personal injuries under the Merchant Marine Act of 1920 (46 U.S.C. sec. 688 (1982)), the Jones Act, and the general maritime law of the United States. The defendant denied that it does business in Illinois so to be subject to the jurisdiction of the Illinois courts. (Ill. Rev. Stat. 1985, ch. 110, par. 2—204.) We granted defendant leave to appeal under Supreme Court Rule 306(a)(1)(iii). 107 Ill. 2d 306(a)(1)(iii).

Plaintiff, whose residence does not appear of record, was injured while employed as a deckhand by defendant while aboard the M/V Su-

perior on the Mississippi River near Alma, Wisconsin. Defendant is a Louisiana corporation with its principal place of business at Wynne, Arkansas. It is not authorized to do business in Illinois. It has no office or employee or officer in Illinois.

Defendant's only business is providing towing service on a fully found basis to Riverway Company, which owns a fleet of barges engaged in the transportation of grain and other commodities in bulk along the Mississippi River and, occasionally, the Ohio River. Defendant uses a fleet of six boats in this service, five of which are bare-boat chartered from Riverway.

Riverway barges are delivered to defendant's towboats midstream by "fleeters," contracted for by Riverway, by the use of harbor tugs. The barges are then moved in tow along the Mississippi River. At their destination, they are moved from the river in the same manner by terminal fleeting service. Defendant does not contract to move commodities of any Illinois business or make deliveries in Illinois. It does purchase fuel, food and supplies from Illinois businesses which are usually delivered to the towboats while midstream on the Mississippi River. Crewmen occasionally board defendant's boats within Illinois. Defendant has repairs made from time to time in Illinois shipyards located in Madison County, Illinois, and the barges in tow regularly move through locks and dams 26 and 27 within Madison County, where they are assisted by boats of Norman Brothers Towing Company located in Madison County, Illinois. The frequency of the purchasing of supplies and repairs is in dispute but we do not deem these matters significant to our decision.

Has defendant engaged in activities of such a character and extent so as to subject itself to the jurisdiction of the courts of the State of Illinois? (See generally *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) Did Lawson & Lawson have those minimum contacts with Illinois such that the maintenance of this action would not offend traditional notions of fair play? *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158; see also *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 368 N.E.2d 88 (wherein the court distinguishes "doing business" in the context of venue).

In *Huffman v. Inland Oil & Transport Co.* (1981), 98 Ill. App. 3d 1010, 424 N.E.2d 1209, defendant operated a towboat company which pushed barges along the Mississippi and Illinois rivers in Illinois. Plaintiff, a Missouri resident, was injured on the Tennessee River in Alabama. Defendant was a Missouri corporation with its principal place of business at St. Louis, Missouri. It maintained no office or em-

ployees in Illinois. We concluded that the business activity of defendant in Illinois was continuous and substantial where it "reflected a regular pattern of commerce and transportation by Inland throughout the waterways of the State." (98 Ill. App. 3d 1010, 1017, 424 N.E.2d 1209, 1215.) Lawson & Lawson argues that *Huffman* is distinguishable because it assumed the Illinois courts would extend *in personam* jurisdiction over nonresident defendants to the extent permitted by Federal due process considerations requiring only minimum contacts, as originally enunciated in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, followed in *Nelson v. Miller* (1957), 11 Ill. 2d 378, 389-90, 143 N.E.2d 673, 679, and *St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 369 N.E.2d 52, as the standard to be applied in Illinois. (See also *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 328, 368 N.E.2d 88, 91.) Defendant points out that in the subsequent case of *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847, the supreme court modified such an approach, requiring that a corporation will be considered to do business in Illinois if it conducts business of such a character and extent as to warrant the inference that it has subjected itself to the jurisdiction and laws of Illinois. See also *Huck v. Northern Indiana Public Service Co.* (1983), 117 Ill. App. 3d 837, 839, 453 N.E.2d 1365, 1368, and *Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1983), 112 Ill. App. 3d 879, 882, 445 N.E.2d 1303, 1305.

Defendant also argues, distinguishing *Huffman* on its facts, that the activities of Inland were more substantial as it regularly picked up and delivered barges to Illinois terminals at Wood River, Lockport, Peoria and Chicago and regularly purchased supplies and services at Economy Boat Store in Wood River.

While there is no all-inclusive test for determining whether a foreign corporation is doing business in Illinois for jurisdictional purposes, measured by any reasonable standard, we are satisfied that subjecting defendant to the jurisdiction of the Illinois courts does not offend traditional notions of fair play. Defendant has more than minimal contacts with Illinois; in our opinion it carries on its usual and customary business in Illinois when it routinely travels along the Mississippi River within the geographical boundaries of Illinois.

In *Schueren v. Querner Truck Lines, Inc.* (1959), 22 Ill. App. 2d 183, 159 N.E.2d 835, the court observed that under the Enabling Act by which Missouri was admitted to the Union, "The Missouri Compromise," (Act of March 6, 1820, ch. 22, 3 Stat. 545), the boundary between Illinois and Missouri is the middle of the Mississippi River, but

the States exercise concurrent jurisdiction over the entire river in matters related to navigation on the river. In *Smoot v. Fischer* (Mo. App. 1952), 248 S.W.2d 38, 41, the court stated:

"Generally speaking, the jurisdiction of a state is merely co-extensive with its boundaries, so that where a stream forms the boundary between two states, neither would have jurisdiction beyond the center of the stream, or beyond whatever may constitute the actual dividing line, in the absence of some lawful agreement or provision extending each state's jurisdiction over the entire stream. But because of the practical difficulty to be encountered in determining whether a particular thing in controversy occurred on one side or the other of the exact dividing line between the two states, it has been found expedient to extend each state's jurisdiction over the whole of such a stream; and out of all this has evolved the concept of concurrent jurisdiction on the part of adjoining states with respect to a stream or watercourse which forms the common boundary between them.

In the case of our own state, the matter was taken care of by the Congress in Section 2 of the Enabling Act, where it was provided that the eastern boundary of the state should be the middle of the main channel of the Mississippi River, and that the state should have concurrent jurisdiction 'on the river Mississippi' and every other river bordering on the state so far as the said rivers should form a common boundary to the state and any other state or states then or thereafter to be formed. Chap. 22, 3 U.S. Stat. 545, R.S. Mo. 1949, p. 36, 1 V.A.M.S. p. 63.

\*\*\* The term 'jurisdiction' relates to matters at least in some way connected with the use of the water for navigable purposes or in some legitimate sense to be regarded as on the water; and what is meant by the grant of concurrent jurisdiction is merely that transactions occurring anywhere on the water, which are the proper subject of concurrent jurisdiction, may lawfully be dealt with by the courts of either of the adjoining states according to its own laws as fully and completely as those occurring elsewhere within its borders."

As to the State of Illinois, the Enabling Act of Congress authorizing the formation of the State provides that Illinois shall have "concurrent jurisdiction on the Mississippi River, with any state or states to be formed west thereof, so far as said river shall form a common boundary to both." Act of April 16, 1818, ch. LXVII, 3 Stat. 428, 429.

Defendant conducts business in Illinois just as would a common carrier whose only route of travel was across the highways of this State, even though goods were not picked up and delivered within Illinois. As further contacts with Illinois, supplies and fuel are purchased in Illinois and repairs are occasionally made at marine shipyards in Illinois.

Plying the waters of the Mississippi within the jurisdiction of Illinois was not only continuous, it was part of the only business activity of defendant. In defendant's view, it was only subject to jurisdiction in Louisiana, its State of incorporation, and Arkansas, where it maintained its home office. The nature of defendant's business is such that the failure to maintain an office in Illinois is not significant. Defendant manufactures no products; therefore, the fact that none of its products regularly enter Illinois is not significant. In the context of the type of business activity carried on by defendant, it regularly and continuously carries on business in Illinois.

The judgment of the circuit court of Madison County is affirmed.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.