BRIDGET COLLETTI, as Adm'x of the Estate of Bernard Colletti, Deceased, *et al.*, Plaintiffs-Appellants, v. VITO CRUDELE, as Adm'r of the Estate of Nicholas Crudele, Deceased, *et al.*, Defendants (Bynum Transport, Inc., Appellee).

First District (2nd Division)  No. 87—1711

Opinion filed May 10, 1988.

---

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.

Joseph R. Curcio, Ltd., and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Kathleen M. Krist, of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Lisa Marco Kouba, Robert L. Reifenberg, and Helen M. Ryan, of counsel), for appellee.

JUSTICE STAMOS* delivered the opinion of the court:

Pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), plaintiffs appeal from an order of the circuit court of Cook County granting the motion of defendant Bynum Transport, Inc. (Bynum), a Florida corporation, to quash service of summons. The order was based on the court's determination that Bynum was not doing business in Illinois for purposes of subjecting it to jurisdiction here.

The underlying wrongful-death action involves an accident in Kentucky, where an automobile in which plaintiffs' decedent was a passenger is alleged to have collided with a truck owned by Bynum. Plaintiffs' decedent is alleged to have been an Illinois resident, and

---

*This opinion was prepared and concurred in prior to the resignation of Justice Stamos from the court.

plaintiffs are also presumably all Illinois residents.[1]

██ Plaintiffs' notice of appeal also purports to appeal from the separate order in which the trial court found, pursuant to Supreme Court Rule 304(a), that there is no just cause for delaying enforcement or appeal of its order quashing service of summons. However, the Rule 304(a) finding is the jurisdictional basis of plaintiffs' appeal; notices of appeal are to be liberally construed (*Baird & Warner, Inc. v. Gary-Wheaton Bank* (1984), 122 Ill. App. 3d 136, 140, 460 N.E.2d 840, 843), and errors that are merely matters of form will not prevent the appellate court's jurisdiction from attaching (*Dillman & Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 339, 442 N.E.2d 311, 315). Therefore, we treat this part of the notice of appeal as having been filed in error.

Plaintiffs contend that in the present action Bynum is subject to the trial court's jurisdiction on three grounds:

> (a) That Bynum consented to jurisdiction over it in the present action by entering its general appearance in three other lawsuits filed against it in Illinois arising from the same accident.

> (b) That Bynum waived its jurisdictional objection by failing to object to consolidation of the present lawsuit with the other three in which it had filed general appearances.

> (c) That Bynum was doing business in this State so as to subject itself to the jurisdiction and laws of Illinois.

We are not persuaded by plaintiffs' first two contentions but, in the limited circumstances of this case, agree with their third. Accordingly, we reverse and remand.

### FACTS

Plaintiffs' complaint and brief allege as follows: On April 3, 1985, plaintiffs' decedent Bernard Colletti was a passenger with two other men, Philip Marrera and Frank Perri, in a car driven by Nicholas Crudele and was killed when the car collided with a truck owned by Bynum and then with another truck. The collision occurred near

---

[1]The caption of this opinion differs from the style used by the parties in their briefs and some pleadings. From the record, it is apparent that the name of plaintiff administratrix is spelled Bridget Colletti, and the name of defendant administrator has been corrected to conform to the trial court's order amending all pleadings to substitute Vito Crudele for Carol Janopoulos as administrator of the estate of Nicholas Crudele, deceased. In addition, certain other defendants' names have been corrected to conform to the style used in their appearances and pleadings.

Richmond, Kentucky. Bernard Colletti and Nicholas Crudele were Illinois residents. The collision occurred as a result of the negligence of Bynum, its employee driver, and the owner and driver of another truck in parking their vehicles alongside the interstate highway.

According to an affidavit of Bynum's president, the Bynum truck involved in the collision was en route from Akron, Ohio, to Highland City, Florida, and had no contact with Illinois while on the trip. The affidavit also stated that Bynum's driver was a resident of Florida.

The three other occupants of the car in which Bernard Colletti rode, or their survivors, filed separate complaints in Cook County against Bynum *inter alios*. According to the affidavit of Bynum's president and motions filed by defendant Cintran, Inc., the present plaintiffs also became parties to complaints against Bynum filed in Federal and State courts in Kentucky, the former of which Bynum contends is identical to the present action.

On April 29, 1986, through counsel, Bynum and its driver filed an answer in at least one of the other three lawsuits. In addition, they filed their cross-claim against certain other defendants in that suit. Plaintiffs state that Bynum and the driver filed an answer and cross-claim in the remaining two lawsuits as well, and Bynum acknowledges having appeared generally in all three other suits, but not all those appearances and answers seem to be contained in the record presented to this court, nor are they indexed in the appendix to plaintiffs' brief.[2]

On June 25, 1986, through other counsel, Bynum and its driver filed their special and limited appearance in the present action and their motion to quash the Florida service of summons on them. On July 7, 1986, in the other Cook County actions in which they had appeared, they were allowed to substitute their new counsel by stipulation with their former counsel.

On July 18, 1986, plaintiffs moved to consolidate the four cases "for purposes of discovery, only." On the same date, the court ordered consolidation "for purposes of discovery only." Notice of this motion was given prior to June 17, 1986, by mail to Bynum at its Florida address, Bynum not yet being represented by counsel in the present action. According to plaintiffs' service list, no notice of this motion was given to any attorney serving as Bynum's counsel in the other

---

[2]The record does disclose that Bynum answered amended complaints filed in the other three actions and moved to dismiss those actions on *forum non conveniens* grounds, but those answers and motions were filed long after Bynum's special and limited appearance in the present action.

three cases.

On July 17, 1986, one day before the motion to consolidate was presented, summons in the present action was served on Bynum's service agent in Chicago. In their reply to plaintiffs' response to their motion to quash the Florida service, Bynum and the driver stated that they had filed an additional motion to quash the Chicago service on their agent. No additional motion to quash seems to be included in the record. However, Bynum's reply did argue as to the Chicago service, and on February 13, 1987, the trial court entered its order granting Bynum's motion to quash the additional purported service of summons.

On February 24, 1987, Bynum moved to correct the February 13 order in order to show that the order had quashed the original (Florida) purported service of summons as well as the Chicago service. On March 16, 1987, the court entered its order granting Bynum's motion and making a Rule 304(a) finding. The February 13 order, as corrected by the March 16 order, is the subject of this appeal.

The parties agree that Bynum is a Florida corporation, that Bynum has procured various types of authority from the State of Illinois to operate its trucks within Illinois, and that Bynum has retained a corporation service company in Chicago to serve as its Illinois agent for service of process.

At a deposition, Bynum's president testified as follows: Bynum's business is trucking, and it has authority from 48 States, including Illinois, to operate within their borders. It owns about 30 trucks, and its business is primarily interstate rather than intrastate. It specializes in delivering orange-juice concentrate, the majority of its customers are orange-juice producers in Florida, and it loads its trucks from the premises of customers who hire it. It needs State authority in order to haul even one load in a State, though its Illinois authority entitles it to send trucks there as often as desired. It procured the authority by mail. Bynum has no control over where its customers might direct it to truck a load.

In 1983, of a gross income of $1,287,282, only $11,635.25, or 0.9%, was derived from Illinois; in 1984, $8,456.79, or 0.47%, of $1,762,210 was so earned; and in 1985, $980.58, or 0.04%, of $2,031,792 was so earned. Those figures include all stops for delivery or pickup in Illinois, but not trips made through the State without such stops.[3] Bynum has never refused any business that would take it

---

[3]However, plaintiffs state in their brief that these figures do not include stops in Illinois.

to or through Illinois, and its trucks have always traveled through Illinois, even if sporadically. When a truck is to make a delivery somewhere, an effort is made to find a load nearby for it to haul on the return trip.

Bynum had assembled everything that it could find for the last few years that recorded trips to or through Illinois. One Illinois company to which Bynum would make deliveries of materials such as phosphate from Florida suppliers was Moorman Manufacturing Company in Quincy. Moorman was not a regular but a sporadic consignee. Another Illinois consignee on at least one 1983 date was Dome Tire Industries in East St. Louis. Records showed 14 stops in Illinois in 1983, 12 in 1984,[4] and five in 1985. Four trips passed through Illinois in 1983 without stopping; 43 passed through in 1984; and seven passed through in 1985.

Bynum does not buy advertising for itself. Salespersons solicit business in Florida but never elsewhere. To arrange return trips from other States, brokers are telephoned. At first, the president did not know whether his company used any Illinois brokers, but he later stated after conferring with staff that no Illinois brokers were used. Bynum had no regular customers or business in Illinois. The president could recall no letters to or from Illinois concerning business. Bills may have been mailed to Illinois, but drivers did not collect bills. The only way that Bynum would generate revenue from Illinois would be to haul a load to or from Illinois.

In their brief, plaintiffs cite to pages of the record indicating on the basis of invoice copies obtained from Moorman Manufacturing Company that Bynum had made 11 trips into Illinois in 1985, rather than the five to which its president testified, and that, on those trips, pickups were made from Moorman for delivery to its facility in Georgia. However, the record discloses that, of those 11 trips, only five were made before the date of the accident at issue.

In their brief, plaintiffs also cite their representation to the trial court that Bynum had stated that there were four other Illinois clients and that plaintiffs had not yet received responses from them as to the number of times Bynum allegedly conducted business with them. However, plaintiffs cite no other basis in the record for their contention that Bynum had identified four other Illinois clients.

---

[4]At one point in their brief, plaintiffs state this figure as 112. At another point, they state that it represented stops at Moorman Manufacturing in Quincy rather than in all of Illinois.

OPINION

## I. CONSENT BY APPEARING IN OTHER CASES

■ Plaintiffs' first contention is that Bynum should be held to have consented to the trial court's jurisdiction *in personam* over it in the present case because Bynum had appeared generally in three other Illinois cases filed as a result of the same accident. Plaintiffs cite no direct authority for their contention but describe Bynum's objection to jurisdiction as "spurious" and "contrived," on the ground that, rather than being inconvenienced by being forced to defend in Illinois, Bynum is already in Illinois defending the other three lawsuits. Plaintiffs urge that Bynum's consent to Illinois jurisdiction in the other three cases amounted to consent in the present case as well. Plaintiffs, who themselves are plaintiffs in at least one other action against Bynum in Kentucky, suggest that Bynum is forum shopping with a view to "play[ing] one jurisdiction's rulings against another[']s."

Bynum attributes its general appearances in the other cases to the improvidence of previous counsel. More cogently, however, Bynum argues that, since under section 2—301(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—301(a)) a defendant can make a special appearance as to even a single cause of action out of several that may be involved in the same lawsuit, Bynum is within its rights in appearing specially in one lawsuit despite having appeared generally in other separate suits involving the same subject matter. Bynum cites *In re Estate of Wrigley* (1982), 104 Ill. App. 3d 1008, 1018, 433 N.E.2d 995, 1004, for its holding that a defendant had not waived a jurisdictional challenge to one count of a complaint by appearing generally on another.

Plaintiffs are correct that, by defending the other three cases on their merits, Bynum will be held to have appeared generally there. (See *Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 295, 408 N.E.2d 1014, 1019.) Any action taken by a litigant that recognizes a case as being in court amounts to a general appearance that precludes a later contest of jurisdiction *in personam*, unless the action was for the sole purpose of objecting to such jurisdiction. (*Lord v. Hubert* (1957), 12 Ill. 2d 83, 87, 145 N.E.2d 77, 80; *Mauro v. Peterson* (1984), 122 Ill. App. 3d 466, 468, 461 N.E.2d 564, 566.) An appearance for any purpose other than to question jurisdiction is general even though designated special. (*Nocholes v. People ex rel. Kochersperger* (1897), 165 Ill. 502, 504, 46 N.E. 237, 237; *Greenberg v. Neiman* (1943), 320 Ill. App. 99, 109, 49 N.E.2d 817, 822.) However, plaintiffs' citations to such cases are beside the point; here, Bynum's special appearance is in

a separate lawsuit, and plaintiffs cite no authority for transmuting that appearance into a general one simply because Bynum has appeared generally elsewhere in a similar case.[5]

■ Nor did the trial court's consolidation order deprive the cases of their separate identities. (See *Kassnel v. Village of Rosemont* (1985), 135 Ill. App. 3d 361, 364, 481 N.E.2d 849, 851-52, *appeal denied* (1985), 111 Ill. 2d 556; *Vitale v. Dorgan* (1975), 25 Ill. App. 3d 941, 944, 323 N.E.2d 616, 618.) The order was for discovery purposes only—as plaintiffs themselves emphasized (for different reasons) when opposing Bynum's *forum non conveniens* motions in the other three cases after service on Bynum was quashed in the present case. There, plaintiffs argued that the motions should be denied because, even though the present case's claim against Bynum could not remain with the others in Illinois, that fact was unimportant because "the four cases were only consolidated for discovery purposes," and Bynum's absence from this case would therefore not disturb discovery overall if the cases remained in Illinois! Moreover, when giving notice of their motion to consolidate, plaintiffs did not rely visibly on their implicit argument that Bynum's insistence on the separateness of the case at bar is a sham; their notice was directed solely to Bynum at its Florida address, plaintiffs not deigning to send notice to Bynum's counsel of

---

[5]Indeed, there is persuasive authority to the contrary. The rule that each count of a multicount complaint is a separate cause of action, to which a special appearance may be made even though the defendant has appeared generally as to other counts, "has the advantage of encouraging quick disposition of uncontested or weak counts." (*Boozer v. United Auto Workers of America, AFL-CIO, Local 457* (1972), 4 Ill. App. 3d 611, 615, 279 N.E.2d 428, 432; accord *In re Estate of Wrigley* (1982), 104 Ill. App. 3d 1008, 1018, 433 N.E.2d 995, 1004; see Ill. Rev. Stat. 1985, ch. 110, par. 2—301(a).) *A fortiori*, a defendant should be permitted to appear specially in a completely separate action even though a general appearance has been entered in a related, closely similar one. A court "cannot introduce new claims of new claimants into an existing suit simply because the defendant has appeared in that suit. The new claimants are strangers and must begin their action by service just as if no one had sued the defendant before. [Citation.] We may repeat with more force concerning defendants what was said *alio intuitu* in a New Jersey case cited in *Reynolds v. Stockton* (1891), 140 U.S. 254, 268, 35 L. Ed. 464, 468, 11 S. Ct. 773, 777. 'Persons by becoming suitors do not place themselves for all purposes under the control of the court.' " (*In re Indiana Transportation Co.* (1917), 244 U.S. 456, 458, 61 L. Ed. 1253, 1255, 37 S. Ct. 717, 718 (involving the steamer *Eastland* disaster).) "[A]n appearance by a defendant to a pleading which states one cause of action, is held not to be an appearance to an amended pleading stating a wholly new and different cause of action." *Durabilt Steel Locker Co. v. Berger Manufacturing Co.* (N.D. Ohio 1927), 21 F.2d 139, 140; accord *Maya Corp. v. Smith* (D. Del. 1929), 32 F.2d 350, 352, 353; *Johnston v. Federal Land Bank* (1939), 226 Iowa 496, 500, 284 N.W. 393, 395; see 6 C.J.S. *Appearances* §33(b), at 53; §36, at 57 (1975).

record in the other three cases even though plaintiffs now take the position that Bynum is simply being perverse by distinguishing its special appearance in this case from its general appearance in those three.

Such a theory as plaintiffs tender, if adopted, might greatly limit defendants' ability to appear specially and would certainly be at odds with the flexibility afforded to specially appearing litigants by section 2—301(a). We therefore reject plaintiffs' contention on this issue.

### II. WAIVER BY FAILING TO OBJECT TO CONSOLIDATION

Plaintiffs next contend that, by failing to object to consolidation of the present case with the other three, Bynum waived the limitation of its special appearance in this case. Plaintiffs point out that if a specially appearing party later participates in other aspects of the case so as to recognize the suit as being in court, the limitation of the party's special appearance is destroyed and the party's jurisdictional objection waived. (*In re Marriage of Falstad* (1987), 152 Ill. App. 3d 648, 653, 504 N.E.2d 908, 912.) From this, plaintiffs argue that Bynum's *inaction* in failing to object to consolidation amounted to *action* agreeing to consolidation and recognizing the present case as being properly before the trial court. Without citation to authority, plaintiffs assert that Bynum could have objected to consolidation while not waiving its jurisdictional objection, by means of a special and limited appearance for purposes of objecting to consolidation.

Plaintiffs themselves acknowledge that a special and limited appearance confines a party to contesting only the question of jurisdiction *in personam*. (*Falstad*, 152 Ill. App. 3d at 653, 504 N.E.2d at 912.) Contesting a motion to consolidate for discovery purposes would certainly have been action beyond contesting jurisdiction. (*Cf. Mauro v. Peterson* (1984), 122 Ill. App. 3d 466, 469, 461 N.E.2d 564, 566 (filing special appearance to contest venue would constitute general appearance, since not an objection to jurisdiction) (cited by plaintiffs); see *In re Marriage of Schuham* (1983), 120 Ill. App. 3d 339, 344, 458 N.E.2d 559, 562.) A court's authority to consolidate cases, especially those involving multiple defendants, cannot depend on whether the court has personal jurisdiction over one particular defendant. Indeed, if four otherwise separate cases were to involve the same jurisdictional issue raised by the same specially appearing defendant, consolidation might well be ordered for the efficient resolution of that very issue.

Since consolidation in the present case was for discovery purposes only, it would have been immaterial to Bynum as the specially appearing defendant whether discovery as to generally appearing co-defendants were to be consolidated with discovery in the other three

cases—even though Bynum itself was a defendant that had appeared generally in those other cases. And not only would such a test by Bynum have been immaterial, it also would have been perilous, in view of the strictures against a specially appearing defendant's further participation in a case. *Cf.* Supreme Court Rule 201(*l*) (107 Ill. 2d R. 201(*l*)) (which immunizes a specially appearing defendant's participation in discovery limited to the special appearance issues from what might otherwise be the operation of the rule against participation in a case by such a defendant).

As Bynum argues, by refraining from a contest of the consolidation motion, it preserved rather than waived its jurisdictional challenge. Therefore, we reject plaintiffs' contention on this issue.

### III. DOING BUSINESS IN ILLINOIS

Plaintiffs' last contention is that, by its activities in Illinois, Bynum was doing sufficient business here to warrant subjecting it to the jurisdiction of Illinois courts, regardless of whether it had otherwise consented to jurisdiction or waived its objections thereto.

Plaintiffs rightly do not rely on the long arm extended by section 2—209 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—209), since they cannot plausibly allege that their cause of action itself arises from Bynum's transaction of business in Illinois (see *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 198, 429 N.E.2d 847, 850; *Huffman v. Inland Oil & Transport Co.* (1981), 98 Ill. App. 3d 1010, 1015, 424 N.E.2d 1209, 1214, *appeal denied* (1981), 85 Ill. 2d 577) or from any other jurisdictional factor enumerated in section 2—209. The truck with which plaintiffs' decedent collided was not on a route that took it through Illinois, nor was its trip connected with any business transaction in Illinois.

Rather, plaintiffs rely on the doing-business doctrine associated with section 2—204 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—204). See *Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1984), 102 Ill. 2d 342, 350, 466 N.E.2d 217, 221, *cert. denied* (1984), 469 U.S. 1036, 83 L. Ed. 2d 401, 105 S. Ct. 511.

■ Under the doing-business doctrine, a foreign corporation that does business in Illinois becomes amenable to service as a resident corporation under section 2—204 because it is considered to have consented to being sued here. (*Cook Associates*, 87 Ill. 2d at 196, 199, 429 N.E.2d at 849, 851.) In such circumstances, the foreign corporation is constructively present in Illinois, and its assent to service on an agent in Illinois can be implied, even for causes of action not arising from its transactions of business in Illinois. *Cook Associates*, 87 Ill. 2d at 199-

200, 429 N.E.2d at 851-52.

■ There is no all-inclusive test for determining whether a foreign corporation is doing business in Illinois (*Cook Associates*, 87 Ill. 2d at 201, 429 N.E.2d at 852), and the determination turns on the unique facts of each case (*Maunder*, 102 Ill. 2d at 350-51, 466 N.E.2d at 221). In general, to "do business" here a foreign corporation must conduct business " 'of such a character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process.' " (*Cook Associates*, 87 Ill. 2d at 201, 429 N.E.2d at 852, quoting *Pembleton v. Illinois Commercial Men's Association* (1919), 289 Ill. 99, 104, 124 N.E. 355, 358, *cert. granted* (1920), 251 U.S. 549, 64 L. Ed. 409, 40 S. Ct. 178, *cert. dismissed on motion of petitioner* (1920), 253 U.S. 499, 64 L. Ed. 1032, 40 S. Ct. 483; see *Natural Gas Pipeline Co. v. Mobil Rocky Mountain, Inc.* (1986), 155 Ill. App. 3d 841, 843, 508 N.E.2d 211, 212.) Stated otherwise, a defendant's activities must show " 'sufficient contacts with this State so that requiring it to defend this action does not offend "traditional notions of fair play and substantial justice." ' " *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 559, 382 N.E.2d 252, 257 (quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343), quoted in *Maunder*, 102 Ill. 2d at 352, 466 N.E.2d at 222.

Though there may be no all-inclusive test, most Illinois cases on personal jurisdiction over foreign corporations are said to have based their findings on the existence of factors such as offices or sales activities in Illinois that connoted continuous and permanent activity. (*Huck v. Northern Indiana Public Service Co.* (1983), 117 Ill. App. 3d 837, 839-40, 453 N.E.2d 1365, 1368, *appeal denied* (1983), 96 Ill. 2d 560 (citing cases).) Still, *Huck* and *Maunder* recognize the need for case-by-case decision making as to whether, in the context of all of each case's circumstances, it would be fair to subject a defendant to the jurisdiction of Illinois courts.

Bynum's Illinois activities cannot necessarily be minimized by reference to the percentage of its total business that its Illinois operations represent; even $5,000 or $10,000 is a substantial amount from a number of perspectives, despite being a small percentage of a thriving company's revenues. Moreover, an approximate average of a dozen trips a year to and from an Illinois consignee is not intrinsically an insubstantial number so as to foreclose immediately consideration as to whether the trips, viewed in light of all the case's circumstances, constitute doing business here. Compare *Williams v. Lawson & Lawson Towing Co.*

(1987), 158 Ill. App. 3d 53, 510 N.E.2d 1308, *appeal denied* (1987), 117 Ill. 2d 555 (six boats plying boundary rivers but seldom if ever landing; defendant was doing business), with *Huffman v. Inland Oil & Transport Co.* (1981), 98 Ill. App. 3d 1010, 424 N.E.2d 1209, *appeal denied* (1981), 85 Ill. 2d 577 (dozens of delivery stops in Illinois waters and 34 Mississippi River lock clearances within Illinois in seven months; defendant was doing business).

In addition, the continuous and systematic nature of Bynum's contacts with Illinois was illustrated by the history of its operations in 1983, 1984, and 1985 and by its president's acknowledgment that it never refused Illinois business, never refrained from traveling to or through Illinois, and always attempted to arrange return trips from Illinois when delivering to consignees here. Though the record does not show that Bynum conducted any of its main line of business (orange-juice concentrate hauling) within Illinois, it appears to have regularly transported industrial materials to Illinois and even to have made return cargo trips from one of the Illinois industrial consignees to that consignee's affiliate in Georgia. The record furnishes no basis for considering Bynum's Illinois industrial haulage to have been merely an insubstantial part of its overall industrial business, and the fact of repeatedly hauling cargo on return trips from an Illinois consignee company to the company's own Georgia affiliate bespeaks an active intrastate procurement of business rather than simply an effort by long-distance telephone to find whatever return loads might turn up in the consignee's vicinity. An additional significant though not independently determinative factor is Bynum's designation of an Illinois registered agent.[6]

■ Fundamentally, however, there is no "precise test or talismanic phrase" with which to determine whether a foreign corporation

---

[6] A further important consideration must be the fact that Bynum is already subject to our courts' jurisdiction in three other closely similar cases arising from the same accident as is involved in the case at bar. Though that fact is not enough directly to transform Bynum's special appearance into a general appearance on the mere theory that filing general appearances in three other cases represented consent *per se* to the exercise of jurisdiction over Bynum in this case, the existence of those other general appearances does implicate the fairness factor that must be considered in determining whether Bynum's activities rise to the level of doing business here.

In other words, the fact of Bynum's general appearances in the three other, related cases may well tip the balance of a close question as to whether it would be fair to consider Bynum as doing business here so as to be subject to Illinois jurisdiction in the case at bar. We believe that, in the peculiar circumstances of this case, any such balance is tipped.

A separate set of factors might, of course, come into play if this matter were con-

is to be considered as doing business In Illinois; rather, the "facts unique to each case" furnish the decisive criteria. (*Maunder*, 102 Ill. 2d at 350-51, 466 N.E.2d at 221.) The complex of facts here makes it, in our view, consonant with both "traditional notions of fair play and substantial justice" and "the fair and orderly administration of the laws" (see *Maunder*, 102 Ill. 2d at 352, 466 N.E.2d at 222) to subject Bynum to the circuit court's jurisdiction in this case. Our decision also comports with the Federal due process standard of minimum jurisdictional contacts. See *Maunder*, 102 Ill. 2d at 348, 466 N.E.2d at 220; *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.

### CONCLUSION

Though rejecting plaintiffs' contentions that Bynum's general appearances *per se* or Bynum's lack of opposition to the consolidation order can be sufficient basis for reversing the judgment that quashed service of summons, we hold that the facts and circumstances of record, coupled with interests of judicial economy, make it fair to consider Bynum as doing business in Illinois and thus subject to Illinois jurisdiction in this case. Because the circuit court's judgment was based on its determination that Bynum was not doing business here, we reverse the judgment and remand this cause to the circuit court of Cook County.

Reversed and remanded.

HARTMAN, P.J., and BILANDIC, J., concur.

---

sidered in the context of a *forum non conveniens* dismissal motion. (See, *e.g.*, *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 109-10, 383 N.E.2d 977, 984-85 (a court may decline jurisdiction even though it may have proper jurisdiction over all parties and subject matter involved); *Silversmith v. Kenosha Auto Transport* (Iowa 1981), 301 N.W.2d 725 (Iowa plaintiff, Wyoming accident, Wisconsin defendant corporation registered to do business in Iowa).) In addition, the question whether Illinois has a significant relationship with a case's subject matter may be considered in assessing a defendant's jurisdictional challenge that involves the issue of doing business (see *Huck*, 117 Ill. App. 3d at 843, 453 N.E.2d at 1371), and in any event Bynum's activities in Illinois are close to the doing-business borderline. Thus, in an alternative procedural context, or without taking account of the fairness issue introduced by existence of the three other general appearances, our decision might be different.