Margaret MILLIGAN, Administrator of
the Estate of Douglas Milligan,
deceased, Plaintiff,

v.

SOO LINE RAILROAD COMPANY, a
Minnesota corporation, and the Kershaw Manufacturing Company, Inc., an
Alabama corporation, Defendants.

No. 91 C 1328.

United States District Court,
N.D. Illinois, E.D.

Oct. 15, 1991.

Gary K. Laatsch, Pavalon & Gifford, Chicago, Ill., Eckman, Collins, Strandness & Egan, P.A., Minneapolis, Minn., for plaintiff Margaret Milligan.

Roger R. Roe, Jr., Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for defendant Soo Line R. Co.

Francis A. Spina, Patricia M. Brown, Tressler, Soderstrom, Maloney & Priess, Chicago, Ill., for defendant Kershaw Mfg. Co., Inc.

## ORDER

BUA, District Judge.

This order concerns defendant, The Kershaw Manufacturing Company, Inc.'s, motion to dismiss for improper venue under 28 U.S.C. § 1391(a)(3), or in the alternative, to transfer to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1406(a). For the reasons stated herein, defendant's motion to dismiss is denied. The court defers judgment on defendant's motion to transfer until it has been fully briefed.

## FACTS

Defendant, The Kershaw Manufacturing Company, Inc. ("Kershaw"), is a corporation organized under the laws of Alabama, with its principal place of business in Alabama. Kershaw manufacturers and produces maintenance-of-way equipment for sale to railroads. Defendant, Soo Line Railroad Company ("Soo"), is a corporation organized under the laws of Minnesota, with its principal place of business in Minnesota.

Douglas Milligan was an Illinois resident employed by Soo. According to plaintiff's complaint, on August 3, 1990, near Crane, Indiana, Milligan was operating a tie injector machine manufactured by Kershaw. While apparently attempting to inspect or repair the tie injector, Milligan was struck in the head by moving parts of the machine. Milligan died later that day due to head injuries caused by the incident. Milligan's mother, Margaret Milligan, as Administrator of his estate, brings this action seeking to recover under multiple theories.[1]

## DISCUSSION

Defendant claims that venue is not proper in this case because Kershaw does not reside in this district, the actions giving rise to the claim did not occur in this district, and Kershaw is not subject to personal jurisdiction. Plaintiff concedes that the first two factors do not apply, but argues that Kershaw is subject to personal jurisdiction.

■ A federal district court sitting in Illinois has personal jurisdiction over a party in a diversity action only if an Illinois court would have jurisdiction. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990). In such an action, the plaintiff bears the burden of providing sufficient evidence to establish personal jurisdiction. *Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir.1987). When deciding a motion to dismiss, the court must accept all undenied factual allegations and resolve all factual disputes in the plaintiff's favor. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988).

■ In Illinois, jurisdiction may be conferred under the Illinois long arm statute, Ill.Rev.Stat. ch. 110, para. 2–209 (1991), or under the common law doctrine of "doing business." *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir.1989); *See Cook*

---

1. Plaintiff seeks recovery from Soo under negligence, wrongful death, and survival theories pursuant to the Federal Employers' Liability Act. 45 U.S.C. §§ 51–60 (1991). Against Kershaw, plaintiff seeks recovery under products liability, wrongful death, and survival theories.

*Assocs., Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill.Dec. 730, 733–734, 429 N.E.2d 847, 850–51 (1981). Either basis is limited by the due process clause of the United States Constitution which requires a defendant to have minimum contacts with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Cook Assocs., Inc.,* 429 N.E.2d at 850. Plaintiff does not assert jurisdiction under the long arm statute, rather she claims that Kershaw is subject to this court's jurisdiction pursuant to the doing business doctrine.

■ According to the doing business doctrine, once an unlicensed foreign corporation is found to be doing business in Illinois, the corporation is amenable to suits in the state, even though they may not arise from the corporation's business in the Illinois forum. *Asset Allocation & Management Co.,* 892 F.2d at 570. The rationale is that a nonresident corporation which conducts business in Illinois purposely avails itself of the jurisdiction and laws of Illinois, and therefore, is considered to have consented to be sued in Illinois courts. *Cook Assocs., Inc.,* 429 N.E.2d at 851. There is no all-inclusive test for determining whether a nonresident corporation is doing business in Illinois. *Id.* at 852. Instead, the facts unique to each case are determinative. *Maunder v. DeHavilland Aircraft of Canada, Ltd.,* 102 Ill.2d 342, 80

Ill.Dec. 765, 769, 466 N.E.2d 217, 221 (1984). Nevertheless, it is well established that in order to impose jurisdiction the non-resident corporation's contacts must be "continuous, permanent, ongoing and systematic ... not occasional or casual." *Reeves v. Baltimore & O R.R.,* 171 Ill. App.3d 1021, 122 Ill.Dec. 145, 148, 526 N.E.2d 404, 407 (1988); *Asset Allocation,* 892 F.2d at 570.

■ Kershaw argues that it is not doing business in Illinois of such a character and to such an extent as to warrant the inference that the corporation has availed itself of the jurisdiction and laws of Illinois. In support of its motion Kershaw states that: it is not incorporated or licensed to do business in Illinois; it does not maintain a registered agent in Illinois; it has only one employee in Illinois; it does not have an office building, mailing address, or telephone number in Illinois; and its percentage of nationwide sales derived from sales in Illinois is not great enough to confer jurisdiction on an Illinois court. (Defendants' Motion to Dismiss at 6–7).

In response, plaintiff claims that Kershaw has regularly and consistently solicited, sold, shipped, and serviced its products in Illinois. Plaintiff first points to Kershaw's sales figures for the years 1988–1990:

| Year | Total U.S. Sales | Total Illinois Sales |
|------|------------------|----------------------|
| 1990 | $28,719,791 | $1,514,559 (5.27% of U.S. sales) |
| 1989 | $28,781,192 | $ 889,811 (3.1% of U.S. sales) |
| 1988 | $28,136,727 | $1,003,455 (3.6% of U.S. sales) |

Second, plaintiff claims that Kershaw's marketing manager and sales representatives travel to Illinois to promote the Kershaw product line. Finally, plaintiff contends that Kershaw's service representatives and engineers come into Illinois to assist in the setup of equipment, to train operators of the equipment, and to troubleshoot the equipment. (Plaintiff's Response to Motion to Dismiss at 2).

Although there may be no all-inclusive test for determining whether a nonresident corporation is doing business in Illinois, most Illinois courts that have addressed the issue have based their decisions on the presence of offices or sales activities in Illinois. *Colletti v. Crudele,* 169 Ill.App.3d 1068, 120 Ill.Dec. 311, 318, 523 N.E.2d 1222, 1229 (1988); *See Braband v. Beech*

*Aircraft Corp.,* 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1978) (defendant doing business in Illinois in part because it had supervisory control over its Illinois distributor and had directed its sales and marketing program at Illinois); *St. Louis–San Francisco Ry. v. Gitchoff,* 68 Ill.2d 38, 11 Ill.Dec. 598, 369 N.E.2d 52 (1977) (defendant was doing business where approximately seven employees in its Chicago office solicited business and one of the employees spent the majority of his time in Illinois coordinating railcars).

While Kershaw may not have an office in Illinois, it does sell products directly to Illinois residents. Kershaw does not dispute this, but instead argues that the percentage of its nationwide revenues derived from sales in Illinois is not great enough to subject it to the jurisdiction of the Illinois courts. In support of this argument Kershaw relies heavily on the case of *Reeves v. Baltimore & O R.R.,* 171 Ill.App.3d 1021, 122 Ill.Dec. 145, 526 N.E.2d 404 (1988). In March of 1979, the plaintiff in *Reeves,* a construction worker, was injured in Ohio while working for a construction company. *Id.* at 405. In February of 1980, the plaintiff filed suit against the railroad in Illinois. Approximately seven years later, in December of 1986, the railroad filed a third-party complaint for indemnity against the Indiana construction company which employed the plaintiff. In turn, the construction company moved to dismiss the third-party complaint for lack of personal jurisdiction. The court denied the motion to dismiss the third-party complaint even though between 1979 and 1982 the construction company had derived between 2–10% of its nationwide revenues from business in Illinois. *Id.* Contrary to Kershaw's assertion, however, the court in *Reeves* did *not* find that the percentage of the construction company's nationwide revenues derived from sales in Illinois was insufficient to be considered doing business in the state. Instead, the court reasoned that since the construction company had done no business in Illinois during the three years (1983–1986) prior to the filing

of the railroad's third-party complaint, specifically in 1986 when the third-party complaint was filed, its contacts to the state were not continuing, permanent, ongoing, or systematic in nature. *Id.*

Kershaw's argument that its nationwide revenues derived from sales in Illinois is not great enough to confer jurisdiction is unpersuasive. Jurisdiction need not be refused merely because the comparative percentage of Kershaw's Illinois based revenue is small when put in the context of its national sales figures. Such was the view of the court in *Colletti v. Crudele,* 169 Ill.App.3d 1068, 120 Ill.Dec. 311, 523 N.E.2d 1222 (1988). In *Colletti* the court held that a trucking company that derived between 0.04%—0.9% of its revenues from activities in Illinois over a period of three years was doing business in Illinois. The court stated, "[defendant's] Illinois activities cannot necessarily be minimized by reference to the total business that its Illinois operations represent; even $5,000 or $10,000 is a substantial amount from a number of perspectives, despite being a small percentage of a thriving company's revenues." *Id.* 523 N.E.2d at 1229. The court did state, however, that " . . . [defendant's] activities in Illinois are close to the doing business borderline. Thus, in an alternate procedural context, or without taking account of the fairness issue raised by the existence of the three other general appearances [in three closely similar cases], our decision might be different." *Id.* 523 N.E.2d at 1230 n. 6.

Kershaw clearly passes over the doing business "borderline" mentioned in *Colletti.* For the years 1988–1990 Kershaw did between $800,000 and $1.5 million worth of business per year in Illinois. The company's Illinois sales in 1990, the year the alleged incident occurred, were $1,514,559.[2] During those same years Kershaw derived between 3–5% of its total United States revenues from sales in Illinois. In addition to these ample sales figures, which are at least 300% greater than the trucking company's percentage of nationwide revenue derived from Illinois in *Colletti,* there is Kershaw's practice of sending employees into Illinois. According to the deposition

---

**2.** No sales figures are available at this time for

1991, the year in which this suit was filed.

testimony of Mr. David Kovacevich, a Kershaw sales representative, Kershaw sends its marketing manager, sales representatives, and service representatives into Illinois. (Plaintiff's exhibit A at 12, 13, 18, 22, 28). Mr. Kovacevich testified that Kershaw's marketing manager and sales representatives travel to Illinois in order to promote the sale of Kershaw's products and handle any problems that may arise between the railroads and Kershaw. (*Id.* at 12, 13, 14, 18, 22). In fact, particular representatives are designated to service those railroads that originate or cross through Illinois. (*Id.* at 12–14, 17–18).

Kershaw's activities in Illinois are not only confined to calling on customers and soliciting sales. Mr. Kovacevich also testified that service representatives or engineers will sometimes come to Illinois if a machine is being delivered to an Illinois railroad or a problem with the machine has arisen. (*Id.* at 22, 23). This is in accordance with Kershaw's practice of usually supplying a service representative following shipment of the equipment, "in order to check out the piece of equipment and also to, in some cases, train the operator in operation of the machine as well as preventative maintenance." (*Id.* at 27, 28). In sum, the court holds that Kershaw's solicitation, sales, and service activities in Illinois demonstrate that its contacts with Illinois are continuous, permanent, systematic, and ongoing. Therefore, Kershaw is subject to this court's jurisdiction under the Illinois common law doctrine of doing business.

■ After determining that jurisdiction is proper under the doing business doctrine, the court must also ensure that the exercise of jurisdiction does not violate constitutional due process concerns. Due process protects an individual against the binding judgment of a state in which he has no, "contacts, ties, or relations." *International Shoe Co.*, 326 U.S. at 319, 66 S.Ct. at 160. However, if by "some act ... the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws," he will be subjected to the jurisdiction of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d

528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

■ Kershaw's contacts with Illinois were not merely casual or random. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. Instead, Kershaw consciously solicited, sold and serviced its products in Illinois. Kershaw directly engaged in the transaction of business in Illinois and, thus, enjoyed the benefits of the laws of Illinois. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Therefore, due process is not offended by this court's assertion of jurisdiction over Kershaw.

### CONCLUSION

For the reasons stated herein, defendant's motion to dismiss for improper venue is denied. The court defers judgment on defendant's motion to transfer until plaintiff has responded and that particular motion has been fully briefed.

IT IS SO ORDERED.