DARRELL E. REEVES, Plaintiff, v. THE BALTIMORE & OHIO RAIL-ROAD COMPANY *et al.,* Defendants (The Baltimore & Ohio Railroad Company, Third–Party Plaintiff-Appellant; Mize Construction, Inc., Third–Party Defendant-Appellee).

First District (1st Division) Nos. 87—2070, 87—2107 cons.

Opinion filed June 20, 1988.

1022

Lord, Bissell & Brooks, of Chicago (Thomas J. Healey, Hugh C. Griffin, and Paul J. Peralta, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (Michael Resis and Victor J. Piekarski, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

On February 19, 1980, the plaintiff, Darrell Reeves (Reeves), filed a suit in the circuit court of Cook County for personal injuries he sustained when the crane unit he was working on tipped and fell off of a trestle. The injury took place on March 27, 1979, in Cincinnati, Ohio, while Reeves was an employee of Mize Construction, Inc. (Mize). Reeves filed suit against numerous parties, including the Baltimore and Ohio Railroad Company (B&O) and Iowa Mold Tooling Company (IMTCO) on the basis of products liability. B&O filed a third-party complaint against Mize on December 19, 1986, premised upon strict liability, express indemnity and contribution. Mize, after filing a special and limited appearance, moved to quash and dismiss the third-party complaint for lack of personal jurisdiction. The trial court granted Mize's motion on May 26, 1987. B&O appeals that ruling.[1]

In 1971, Mize was incorporated in the State of Indiana. On September 9, 1978, B&O and Mize entered into a contract (the contract was not in any way connected to Illinois, *i.e.*, the negotiation, performance, and execution did not occur in Illinois) under which Mize was to remove B&O tracks in Ohio. On March 27, 1979, Reeves, a Mize employee, was injured while in Ohio on the B&O/Mize job. B&O claimed

---

[1]IMTCO, which was initially a party to this appeal, has dismissed its appeal as a result of a settlement with plaintiff.

that Mize's relevant contacts with Illinois were sufficient to constitute doing business in Illinois. Mize's business contacts with Illinois were established as involving substantially the following percentages of business during the years set forth below:

Percentages of gross revenue derived from Illinois work

| 1979 | 5% to 10% |
|------|-----------|
| 1980 | 5% to 10% |
| 1981 | 5% to 6% |
| 1982 | 0% to 2% |
| 1983-86 | 0% |

Since 1982, Mize has done no work in Illinois and has derived no income from Illinois jobs. In fact, since 1983, Mize has been out of business. A successor corporation, Pine Construction, Inc., was formed. Pine is not in the construction business and had no contacts with Illinois. Mize never had, and, of course, does not now have, an office in Illinois or a registered agent, nor did it have or does it now own any real estate in Illinois.

The issue raised by B&O on appeal concerns whether Mize was "doing business" in Illinois during the claimed relevant period of time which B&O contends was when its cause of action arose or, in any event, when the underlying action was filed in Cook County. If so, B&O asserts that the Illinois courts then had personal jurisdiction over Mize. Consequently, B&O contends that the trial court erred when it granted Mize's motion to quash and dismiss B&O's claim against Mize for lack of personal jurisdiction because, B&O claims, Mize was clearly "doing business" in Illinois during these relevant time periods.

■ The burden of asserting personal jurisdiction over a nonresident defendant rests on the party who asserts that jurisdiction exists. (*R. W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 489 N.E.2d 1360.) Thus, it was B&O's burden to show that the constitutional requirement of minimum contacts, in accordance with due process, had been met, and specifically, B&O had to have alleged facts in its complaint upon which jurisdiction could be found over the nonresident defendant. See *Heller Financial, Inc. v. Conagra, Inc.* (1988), 166 Ill. App. 3d 1, 453 N.E.2d 828; *Bobka v. Cook County Hospital* (1983), 117 Ill. App. 3d 359, 360-61, 453 N.E.2d 828, 829-30.

■ An examination of B&O's third-party complaint reveals absolutely no allegations of facts upon which Illinois courts could base jurisdiction. This failure to include factual allegations of Mize's acts in Illinois is, in and of itself, fatal to B&O's claim. (See *Heller Financial,* 166 Ill. App. 3d 1, 453 N.E.2d 828.) Hence, B&O's lack of proper

allegations in its third-party complaint provides a separate and independent basis for dismissal of the third-party complaint other than that found by the trial court.

■■■ Nevertheless, while this failure to allege sufficient jurisdictional facts would normally be fatal to B&O's assertions, we will also examine B&O's other contentions concerning the asserted jurisdictional basis for its claim against Mize, because, inasmuch as Mize never raised such an argument itself, the interests of justice require such an examination. (See *Parks v. McWhorter* (1985), 106 Ill. 2d 181, 478 N.E.2d 324, *appeal after remand* (1986), 144 Ill. App. 3d 270, 494 N.E.2d 234.) A party may assert personal jurisdiction over a nonresident defendant in Illinois on the following bases: (a) under the Illinois long arm statute, which subjects a nonresident to jurisdiction if the nonresident has transacted business in Illinois, and where that business was transacted in connection with or arose from the claim being asserted, or where the tortious act complained of occurred in Illinois (Ill. Rev. Stat. 1985, ch. 110, par. 2—209); or (b) under the principle established by Illinois case law, which subjects a nonresident to personal jurisdiction if that defendant is generally "doing business" in Illinois. (See *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) Here, there can be no question that the proper standard to be applied is the "doing business" standard, since the underlying tort occurred in Ohio, and any business transacted in connection with the job on which Reeves was injured did not occur in Illinois.

■ "Doing business" for jurisdictional purposes means that the nonresident defendant, in this case, the corporation, is conducting business in Illinois of such a character and to such an extent as to warrant the inference that the corporation has purposefully availed itself of the jurisdiction and laws of Illinois. (*Cook Associates, Inc.*, 87 Ill. 2d 190, 429 N.E.2d 847.) Illinois courts have required continuous, permanent, ongoing and systematic contacts with Illinois, which are not occasional or casual, to establish such a jurisdictional basis. (*Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1984), 102 Ill. 2d 342, 351, 466 N.E.2d 217, 221, *cert. denied* (1984), 469 U.S. 1036, 83 L. Ed. 2d 401, 105 S. Ct. 511.) Accordingly, the "doing business" standard must turn on the unique facts of each case. (*Maunder,* 102 Ill. 2d at 350-52, 466 N.E.2d at 221.) The focus, however, must be upon contacts purposely directed towards Illinois, rather than a business' mere physical presence in Illinois. *Maunder,* 102 Ill. 2d at 353, 466 N.E.2d at 221; see also *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174.

The parties here dispute the time period which must be examined to determine whether Mize was "doing business" in Illinois. B&O argues that the relevant time period is either when the underlying injury of the initial plaintiff occurred (March 27, 1979) or when the plaintiff's underlying suit was filed (February 19, 1980), relying on Pennsylvania and California case law to support its assertion. B&O also contends that it is irrelevant that Mize dissolved in 1983 because Illinois law specifically allows claims against dissolved corporations up to five years after dissolution. (See Ill. Rev. Stat. 1985, ch. 32, par. 12.80.) Mize, on the other hand, argues that the determinative time under Illinois law is.when B&O filed its third-party claim against it, *i.e.*, when Mize was joined as a party to the suit (December 19, 1986) which was the time that service of process on Mize would have been attempted.

We find that the cases cited by the parties are not dispositive of the issue presented here. B&O relies on a Pennsylvania case, *Mobay Chemical Corp. v. Air Products & Chemicals, Inc.* (1981), 290 Pa. Super. 489, 434 A.2d 1250, which was based upon the Pennsylvania long arm statute and dealt with business transacted which was specifically related to the claim presented, and *Miller v. Miller* (1986), 176 Cal. App. 3d 1183, 222 Cal. Rptr. 652, which involved an individual defendant, and was based expressly upon California marital law and Federal law. Conversely, Mize relies on two cases which are not factually applicable to the case at bar. Mize first cites *Wilson v. Central Illinois Public Service Co.* (1988), 165 Ill. App. 3d 533, 519 N.E.2d 44, where the court found that the relevant point in time to be examined to determine whether the defendant was "doing business" for purposes of venue under the Illinois venue statute was the time of the institution of the suit and that for purposes of venue more extensive contacts were required than those merely required for the determination of jurisdiction. (Ill. Rev. Stat. 1985, ch. 110, par. 2—101.) Mize also cites *Nicholas v. Inglimo* (1981), 96 Ill. App. 3d 695, 421 N.E.2d 1014, which is equally inapplicable, since the court there was only concerned with whether proper service of process had been obtained on an individual nonresident defendant in that case. Thus, none of the cases cited have dealt with what time period was the proper period for jurisdictional purposes, under the "doing business" concept in Illinois.

■ We must, therefore, look to the underlying rationale set forth by the Illinois courts in the application of the "doing business" standard to determine what time period is relevant. Since the theory of jurisdiction in the "doing business" concept is based upon a perma-

nent and continuing relationship with Illinois, this necessarily suggests that the court must look to a continuous period of time, and not a specific fixed point in time. Moreover, since the basis for the assertion of jurisdiction under the "doing business" standard is not connected to and does not arise out of the cause of action (as contrasted with the "transaction of business" standard in the long arm statute), the time the claim arose or occurred would not be the proper determinative point in time either. Indeed, it would seem that the due process mandates of the United States Supreme Court decisions, which require minimum contacts with the forum State before jurisdiction may be exercised over a nonresident defendant, would prohibit using the time that the claim arose as being determinative under the "doing business" standard since these decisions also require that present contacts be examined for purposes of jurisdiction. (See *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174; *World Wide Volkswagon Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.) Furthermore, jurisdiction under our "doing business" standard is premised on the idea that a nonresident corporation that purposefully does business in Illinois has consented to being sued in Illinois, and the corporation is, thus, treated as being constructively present in Illinois such that it assents to service of process by Illinois courts. (See *Cook Associates, Inc.*, 87 Ill. 2d at 199-200, 429 N.E.2d at 851.) Accordingly, the focus, for jurisdictional purposes, must, we believe, necessarily be upon the time the nonresident defendant became a party to the suit or was served with process. The relevant time frame here then would be from approximately the time the claim arose or occurred up to and including the time the defendant was made a party to the suit and service of process was attempted. Although we find that the court should review contacts over this entire period, we note that the critical point of the focus of inquiry must be upon the time that the defendant is made a party to the suit and is served with process. This conclusion is, we also believe, supported by the rationale of our supreme court in *Cook Associates*, where the basis of the claim arose in 1976 and the suit was filed in 1977. While the court there did not specify what the relevant dates were, it did examine the defendant's contacts for the entire period, from 1976 to 1977. Such a conclusion is, additionally, supported by this court's decision in *Huck v. Northern Indiana Public Service Co.* (1983), 117 Ill. App. 3d 837, 453 N.E.2d 1365, where the court examined the contacts of the defendant up to two years before the tort occurred, but primarily focused on the present, ongoing activities of the corporation in Illinois to find jurisdiction.

 We, therefore, find that the relevant time period to be examined here was from approximately September 1978, when B&O and Mize entered into their contract, which is the basis of the indemnity claim, until approximately December 1986, with the critical focus of the inquiry being specifically in December 1986, when Illinois would have attempted to assert jurisdiction over the nonresident corporation, Mize.

The facts here, as stated earlier, show that the approximate percentages of gross revenue that Mize derived from Illinois work were 5% to 10% in 1979, 5% to 10% in 1980, 5% to 6% in 1981, 0% to 2% in 1982 and 0% in the years 1983-86. Furthermore, as earlier noted, Mize did not have an office, a registered agent, or own real estate in Illinois, and Mize has been dissolved since 1983. Thus, from 1983 to 1986, Mize, in fact, did not do any business in Illinois and derived no income from any Illinois jobs. Since the focus of our analysis is upon late 1986, when Mize became a party to this suit and was served with process, and, since, at that time, Mize had been out of business and had had no contacts with Illinois for approximately three years, we find that Mize was not "doing business" in Illinois during the relevant time period. Hence, although Mize did have contacts with Illinois, they were not continuous, systematic, or permanent in nature, which was necessary for Illinois to assert jurisdiction over defendant Mize.

 Finally, we find no merit in B&O's claim that the Illinois statute which allows suits against dissolved corporations up to five years after dissolution can be applied here. (See Ill. Rev. Stat. 1985, ch. 32, par. 12.80.) That statute applies only to corporations organized in Illinois which are subsequently dissolved under Illinois law. (See Ill. Rev. Stat. 1985, ch. 32, pars. 1.80, 12.80.) We are not persuaded by B&O's contentions that somehow this statute, by analogy, can be applied to a dissolved foreign corporation, since an Illinois corporation dissolved under the statute would have had, by its very nature of having been organized under the laws of Illinois, a continuous, systematic, and permanent relationship with Illinois.

Accordingly, for all of the foregoing reasons, the judgment of the circuit court of Cook County quashing service and dismissing the third-party complaint against Mize should be affirmed.

Judgment affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.