**MC CLUB SERVICES, INC., Plaintiff,**

**v.**

**Lee C. STOVALL and Beryl Stovall, d/b/a International Oil and Gas Consultants, a Texas unincorporated association, and d/b/a Stovall Operating Company, a Texas unincorporated association, Lee C. Stovall, Beryl Stovall and Troy Stovall, individually, Defendants.**

**No. 89 C 1038.**

United States District Court, N.D. Illinois, E.D.

June 6, 1989.

---

Arthur M. Holtzman/Cynthia L. Meltzer, Pedersen & Houpt, Chicago, Ill., for plaintiff.

John J. Jawor/David C. Duggan, Abramson & Fox, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff MC Club Services, Inc. ("MC Club") brings this diversity action charging defendants Lee Stovall, Beryl Stovall, Troy Stovall and their business (collectively "Stovalls") with the breach of various common law duties arising from the parties' contractual relationship. The Stovalls move to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. For the following reasons, the motion is denied.

## I.

### Factual Background [1]

An Illinois corporation and various Illinois partnerships (collectively "Owners"), owners of some oil and gas wells in Texas, entered into a contractual relationship with the Stovalls by which the Stovalls agreed to operate the wells in return for a fee. The Stovalls also agreed to send to the Owners invoices as to the expenses and costs incurred and any profits earned from the wells. The Owners assigned their rights and duties arising from the contracts to MC Club, an Illinois corporation.[2] MC Club alleges in support of its four-count action that the Stovalls sent fraudulent statements to MC Club inflating the expenses and costs and understating the profits. The complaint charges breach of contract, actual fraud and fraudulent inducement to enter into the contract and seeks an accounting of revenues and expenses.

The Stovalls are citizens of Texas. Their only contacts with Illinois included various telephone calls to the Owners and MC Club during and after negotiation of the contract, mailings of the statements into Illinois and a stopover at Midway Airport in Chicago. They do not operate any businesses, employ anyone or own property in Illinois. In their motion, the Stovalls contend that these contacts are insufficient to establish an Illinois court's personal jurisdiction over them.

## II.

Illinois law circumscribes our authority to exercise personal jurisdiction over nonresident defendants in a diversity action. *Young v. Colgate–Palmolive Co.*, 790 F.2d 567, 569 (7th Cir.1986). We may exercise jurisdiction over nonresident corporations that are "doing business" in Illinois or whose activities in Illinois fall within the ambit of the Illinois long-arm statute, Ill. Rev.Stat. ch. 110, ¶ 2–209.[3] *Deluxe Ice*

1. We take as true for purposes of this motion uncontroverted allegations in the complaint, uncontroverted evidence submitted by the parties in support of and in opposition to the motion and MC Club's evidence where controverted by the Stovalls. *Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302 1306 n. 7 (7th Cir.1988).

2. The Stovalls indicate that in the event they do not prevail in this motion, they will challenge the complaint for, among other things, failure to name the Owners who are indispensable parties.

3. The long-arm statute provides
   (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of this State as to any cause of action arising from the doing of any of such acts:

*Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1212 (7th Cir.1984); *Reeves v. Baltimore & Ohio R.R. Co.*, 171 Ill.App.3d 1021, 122 Ill.Dec. 145, 147, 526 N.E.2d 404, 406 (1st Dist.1988). Under either approach, we must independently assess whether exercising judicial power over the defendants offends the due process clause of the United States Constitution. *John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 401 (7th Cir.1987); *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981) ("[T]he boundaries or limits under [the Illinois long-arm] statute are not to be equated with the 'minimum contacts' test under the due process clause.").

### A. The Long–Arm Statute

■ MC Club instead bases our jurisdiction on the long-arm statute. To exercise jurisdiction under the long-arm statute on the basis of the transaction of business or commission of a tortious act, the plaintiff must establish a connection between the defendant's activity in Illinois and the unlawful conduct that forms the basis of the complaint. Ill.Rev.Stat. ch. 110, ¶ 2–209(d). *Saylor v. Dyniewski* 836 F.2d 341, 343 (7th Cir.1988); *Young*, 790 F.2d at 570; *Loos v. American Energy Savers, Inc.*, 168 Ill. App.3d 558, 119 Ill.Dec. 179, 522 N.E.2d 841 (4th Dist.1988). Since we find that the Stovalls have committed a tortious act in Illinois within the meaning of the statute, we need not determine whether they additionally have "transacted business" here.

MC Club connects the Stovalls' alleged fraud to Illinois on the basis of the following: the Stovalls mailed their fraudulent invoices and receipts to MC Club in Illinois, and MC Club's financial injury was sustained in Illinois. The Stovalls are correct that the latter, by itself, cannot vest jurisdiction in an Illinois court. The genesis of this proposition of law came in *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981). There, the Illinois Supreme Court assessed

(1) The transaction of any business within this State;
(2) The commission of a tortious act within this State;
    *      *      *      *      *      *

Illinois' jurisdiction under the long-arm statute over counterdefendant Green whose alleged tortious conduct occurred in Texas. Green purportedly misappropriated and converted funds from the Texas subsidiary of an Illinois corporation. The issue that faced the court was whether the indirect economic injury to the Illinois parent connected the tortious conduct, all of which occurred in Texas, to Illinois for purposes of the long-arm statute.

The court began its analysis by summarizing the "last event" doctrine as enunciated in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961): a tort is committed where the tortious conduct and the last event necessary to establish liability occurred. *Green*, 56 Ill.Dec. at 660–61, 427 N.E.2d at 1206–07. Thus in *Gray*, the fact that a defective product injured the plaintiff in Illinois was sufficient to vest an Illinois court with jurisdiction even though the tortious conduct occurred elsewhere. While this doctrine would have appeared to have supported Illinois' jurisdiction over the *Green* counterdefendant since economic injury occurred in Illinois, the Illinois Supreme Court held to the contrary because the injury in Illinois was too remote from the tortious conduct. The tort "ended" when the Texas subsidiary sustained direct injuries:

> [Holding otherwise] opens the gates of long-arm jurisdiction to every Illinois resident who incurs loss as the result of the fraud of a nonresident, no matter how distant the misconduct and circumstances of the loss are from Illinois. A less tenuous and contrived connection between the tortious act and this State is required to satisfy the statutory provision that its commission be within Illinois.

*Id.* 56 Ill.Dec. at 661, 427 N.E.2d at 1207. *See also Young*, 790 F.2d at 570–71 (finding under *Green* that injury suffered by

(d) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section.

Illinois shareholders as the result of direct financial injury to a nonresident corporation does not support the exercise of personal jurisdiction over the tortfeasors).

We agree with MC Club that *Green* is distinguishable because MC Club was directly injured in Illinois by the Stovalls' alleged misconduct. The *Green* court indicated that its holding was based not on the fact that the injury in Illinois was economic but on the fact that it was indirect: "The tortious acts if any, and the losses or injury were complete when they occurred in Texas. That, therefore, was the place of the wrongs." 56 Ill.Dec. at 661, 427 N.E.2d at 1207. However, the Illinois Supreme Court has applied *Green* beyond its narrower reasoning to hold that direct economic injury in Illinois is insufficient to support long-arm jurisdiction. In *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill.2d 304, 95 Ill.Dec. 496, 489 N.E.2d 1360 (1986), the third-party defendant's acts allegedly directly injured the third-party plaintiff in Illinois. In denying jurisdiction, the court cited to *Green* for the following broader proposition of law:

> [J]urisdiction would not be proper under the tortious-act section of the long-arm statute since an economic loss which is felt in Illinois is not sufficient to confer jurisdiction in our courts when the acts occurred outside of Illinois.

*Id.*, 95 Ill.Dec. at 500, 489 N.E.2d at 1364. *See also Yates v. Muir* 112 Ill.2d 205, 97 Ill.Dec. 394, 492 N.E.2d 1267 (1986) (attorney malpractice in Kentucky did not confer jurisdiction in Illinois merely by virtue of the fact that plaintiff suffered economic injury in Illinois); *Turnock v. Cope* 816 F.2d 332, 335 (7th Cir.1987) ("An economic injury, *by itself,* is too remote from the defendant's misconduct to support the conclusion that a tortious act was committed in Illinois." (Emphasis added.)).

Sitting in diversity, we must apply the law as dictated by the Illinois Supreme Court, however unexplained, and hold that MC Club's injury by itself does not vest this Court with personal jurisdiction over the Stovalls. However, MC Club has pointed to conduct by the Stovalls—the mailings of the fraudulent statements into Illinois—

which takes this case out of *Green's* reach and supports our exercise of personal jurisdiction under the long-arm statute. In an exhaustive analysis of Illinois case law, Judge Milton I. Shadur concluded in *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341 (N.D.Ill.1984), that, notwithstanding *Green,* the mailing of money or messages into Illinois that constitutes part of the tortious conduct, coupled with an intent to affect Illinois interests, satisfies the requirements of the long-arm statute. *Id.* at 346–47. The intent to which Judge Shadur referred simply means a deliberate violation of *Illinois* law. *Id.* at 346 n. 8. Thus, for example, fraudulent communications into Illinois does not confer jurisdiction if similar communications were made into other jurisdictions as well. *State Security Ins. Co. v. Frank B. Hall & Co., Inc.,* 530 F.Supp. 94 (N.D.Ill.1981). *Cf. Connolly v. Samuelson,* 613 F.Supp. 109, 112 (N.D.Ill.1985) (Aspen, J.) (phone calls and the mailing of letters into Illinois did not confer jurisdiction because they were not alleged to have constituted the tortious acts). MC Club has alleged that the Stovalls' tortious conduct consisted of the mailing of fraudulent invoices and receipts into Illinois with injury only to Illinois residents. Under this line of cases, these allegations coupled with economic injury are enough to vest this Court with personal jurisdiction over the Stovalls.

### B. Due Process

■ The Stovalls' contacts with Illinois were sufficiently significant "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). Due process is not offended when "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), *quoting World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The

**374**

Stovalls contracted with Illinois residents, and their alleged tortious activities were directed at them. Surely they should have anticipated that such conduct would subject them to the jurisdiction of the Illinois courts.[4] *Accord Club Assistance*, 594 F.Supp. at 348. Accordingly, our exercise of jurisdiction over the Stovalls does not run afoul of the due process clause of the Fourteenth Amendment.[5]

### III.

### Conclusion

The long-arm statute vests this Court with personal jurisdiction over the Stovalls in this action and exercising that jurisdiction does not violate due process. Accordingly the motion to dismiss is denied.[6] The Stovalls are to answer the complaint within fifteen days. The June 13 status is stricken and reset to July 7, 1989, at 10:00 a.m. It is so ordered.

---

**4.** That the Stovalls may not have believed that their activities would subject them to our jurisdiction is of no consequence, for the standard enunciated by the Supreme Court is objective—whether they reasonably should have anticipated an Illinois' court's exercise of jurisdiction over them.

**5.** There is no support for the Stovalls' final contention that our exercise of jurisdiction would violate the commerce clause, U.S. Const. art. I, § 8. As our discussion has demonstrated, courts have consistently exercised personal jurisdiction over defendants in common law ac-

tions on the basis of interstate mailings and telephone calls. At no time have those courts considered the commerce clause implicated.

**6.** MC Club additionally moves to strike various portions of the affidavits submitted by defendants in support of their motion to dismiss. The following portions of those affidavits constitute conclusions of law and are accordingly stricken: Beryl Stovall Affidavit—¶ 13 and sentence 3 of ¶ 3; Lee Stovall Affidavit—¶ 17 and sentence 3 of ¶ 3; Troy Stovall Affidavit—¶ 12 and sentence 3 of ¶ 3.