MORECAMBE MARITIME, INC., Plaintiff-Appellant, v. NATIONAL BANK
OF GREECE, S.A., Defendant-Appellee.

First District (4th Division)   No. 1—03—3578

Opinion filed December 23, 2004.

Law Offices of Michael J. Rovell, of Chicago (Michael J. Rovell and Lisa I. Fair, of counsel), for appellant.

Kirkland & Ellis, L.L.P., of Chicago (Mark S. Lillie, Hariklia Karis, and S. Raja Krishnamoorthi, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Morecambe Maritime, Inc., appeals from the circuit court's order granting defendant's motion to dismiss for lack of personal jurisdiction. Specifically, plaintiff argues that the Illinois courts' assertion of personal jurisdiction over defendant, National Bank of Greece. S.A., would not offend due process because defendant had previously conducted business in Illinois and currently has a local subsidiary. For the following reasons, we affirm.

Plaintiff is a Liberian corporation with its principal place of business in Liberia. Defendant is a Greek corporation with its principal place of business in Athens, Greece, and an office in London, England. Defendant also had an office in Chicago until December 31, 1998, when it surrendered its certificate of authority to conduct business in

Illinois. Atlantic Bank of New York (ABNY), a subsidiary of defendant, acquired the Chicago office from defendant for approximately $10 million worth of ABNY shares on January 1, 1999.

On January 16, 1998, plaintiff entered into a loan agreement with defendant. Under the loan agreement, plaintiff borrowed $4,531,250 from defendant to assist in refinancing existing debt that plaintiff owed defendant. As collateral for the loan, plaintiff provided defendant with a first mortgage on the M.V. Doxa (the Doxa), a motor tanker owned by plaintiff and registered in the Bahamas. The entire formation of the contract occurred in defendant's London branch. The contract includes a choice of law provision specifying English law as the governing body of law and a submission to jurisdiction provision which states that, "The parties further agree that only the Courts of England and not those of any other State shall have jurisdiction to determine any claim which the Borrower may have against the Bank arising out of or in connection with this Agreement." In addition, the security agreement regarding the Doxa also specifies England as the forum for any claims that plaintiff may have against defendant regarding the mortgage.

In September 1999, the Doxa suffered severe engine damage and was taken to India to be moored. Subsequently, an insurance claim for the damage to the Doxa was settled for $6,500,000. Following this settlement, plaintiff and John Makris, a representative of defendant, entered into an agreement that the insurance proceeds would be used to repair the ship and that mortgage payments would stop for a brief period of time but later resume. Unbeknownst to plaintiff, Makris did not have the authority to enter into this agreement. Consequently, on February 11, 2000, defendant's London office sent plaintiff a default notice claiming plaintiff had failed to pay installments of $156,250 in principal on November 9, 1999, and on February 9, 2000. Plaintiff also failed to pay one installment of $61,457.09 in interest. As a result, the default notice called the entire loan due.

In March 2002, plaintiff filed suit in the circuit court of Cook County alleging breach of contract. The complaint was served on defendant in Athens, Greece, on November 8, 2002. On February 7, 2003, defendant filed a motion to dismiss for lack of personal jurisdiction pursuant to section 2—301 of the Code of Civil Procedure (735 ILCS 5/2—301 (West 2002)). The circuit court heard oral arguments and reviewed the submitted documents solely on the issue of personal jurisdiction.

According to the declaration of Constantinos Othoneos, defendant's manager of international network, division B, ABNY received "all right, title, and interest" to the Chicago office effective January 1,

1999. ABNY also assumed substantially all of the Chicago office's liabilities. Defendant neither loaned nor assisted in the training of any of ABNY's employees in the Chicago office. Moreover, Othoneos stated that as of January 1, 1999, defendant does not own any real property in Illinois and does not have an address, a phone number, bank accounts, employees, agents, or a registered representative for service of process in Illinois. Finally, Othoneos stated that defendant was organized under the laws of Greece and does not conduct any business in Illinois.

In an affidavit, James Maxwell, executive vice president and general counsel of ABNY, described ABNY as "a separate, fully capitalized corporate entity distinct from [defendant]." He stated that ABNY maintains separate books, corporate records, tax returns, and financial statements. Moreover, ABNY pays its own bills and legal fees, generates its own business, and funds its operations without capital contributions from defendant. Although plaintiff alleges that defendant's then-deputy of the board also served as an ABNY director, Maxwell stated that none of ABNY's executives are executives of defendant. In addition, ABNY does not act as defendant's agent in Illinois. Furthermore, defendant does not participate in any of ABNY's daily decision-making.

In a supplemental affidavit, James Maxwell described the sale of the Chicago branch from defendant to ABNY as a full, rather than cosmetic, transfer of power. Maxwell also denied that ABNY has performed any services for defendant in Illinois since the transfer of power. Finally, Chicago Community Bank acquired ABNY's Chicago office on October 25, 2001.

Plaintiff did not submit any documentary evidence to rebut either the declaration of Constantinos Othoneos or the affidavits of James Maxwell. Subsequently, the circuit court granted defendant's motion, and plaintiff filed a timely notice of appeal.

Plaintiff argues that due process is not offended when a nonresident corporation that had previously conducted business in Illinois and currently has a local subsidiary is required to defend a lawsuit in Illinois. Therefore, plaintiff argues, Illinois courts may assert personal jurisdiction over defendant. We disagree.

We review this issue *de novo* because the circuit court granted defendant's motion to dismiss based only upon documentary evidence. *Reimer v. KSL Recreation Corp.*, 348 Ill. App. 3d 26, 33 (2004). Plaintiff bears the burden of establishing a *prima facie* case for the assertion of personal jurisdiction over defendant; however, uncontradicted evidence may overcome the *prima facie* case and defeat jurisdiction. *Reimer*, 348 Ill. App. 3d at 33.

■ Under the following conditions relevant to this appeal, an Illinois court may assert personal jurisdiction over a nonresident defendant corporation if the cause of action arises out of an act within the state, if the nonresident defendant corporation is doing business within the state, or on any other basis permitted by the Illinois Constitution and the United States Constitution. 735 ILCS 5/2—209 (West 2002); *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 845-46 (2001). Because the cause of action in the instant case did not directly arise out of an act within Illinois, we first address whether defendant was doing business within the state, and then address whether the assertion of personal jurisdiction is permitted on any other basis under the Illinois Constitution and the United States Constitution.

■ Under Illinois's "doing business" doctrine, personal jurisdiction is permissible if the nonresident defendant is conducting business in Illinois that is "of such a character and to such an extent as to warrant the inference that the corporation has purposefully availed itself of the jurisdiction and laws of Illinois." *Reeves v. Baltimore & Ohio R.R. Co.*, 171 Ill. App. 3d 1021, 1025 (1988), citing *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d 190 (1981). A corporation's activities need to be consistent and permanent, not sporadic or casual. *Cook*, 87 Ill. 2d at 202-03. Whether or not a corporation is doing business in Illinois varies based upon the facts of each case (*Reeves*, 171 Ill. App. 3d at 1025, citing *Maunder v. DeHavilland Aircraft of Canada, Ltd.*, 102 Ill. 2d 342, 350-52 (1984)), with the focus on the corporation's contacts purposely directed towards Illinois (*Reeves*, 171 Ill. App. 3d at 1025, citing *Maunder*, 102 Ill. 2d at 353).

If the nonresident defendant is a parent corporation of a local subsidiary, Illinois courts cannot assert personal jurisdiction over the nonresident parent corporation simply because they have personal jurisdiction over the local subsidiary. *Alderson*, 321 Ill. App. 3d at 854. Because a parent corporation necessarily controls, directs, and supervises its subsidiaries to a certain extent, courts must determine whether the subsidiary is conducting its own business or the parent corporation's business. *Alderson*, 321 Ill. App. 3d at 854. If the subsidiary is effectively only doing business for the parent corporation, assertion of personal jurisdiction over the nonresident parent corporation is permissible. *Alderson*, 321 Ill. App. 3d at 854. However, the existence of common officers of both the parent and the subsidiary is not sufficient, by itself, to permit jurisdiction over the nonresident parent corporation. *Alderson*, 321 Ill. App. 3d at 854.

In *Reeves*, 171 Ill. App. 3d 1021, B&O Railroad and Mize Construction entered into a contract in September 1978. On March 27, 1979, a Mize employee was injured in Ohio and filed a suit against the B&O in

February 1980. On December 19, 1986, B&O filed a third-party action against Mize in Illinois. *Reeves*, 171 Ill. App. 3d at 1023. Mize had derived 5% to 10% of its income from Illinois in the years 1979 and 1980, 5% to 6% in 1981, 2% in 1982, and nothing between 1983 and 1986. Mize had never maintained an office in Illinois, had no registered agent and owned no property in this state. *Reeves*, 171 Ill. App. 3d at 1028.

The *Reeves* court found that the relevant time period to be examined was from the time of the entry of the parties into the contract which was the basis of the claim in September 1978 and the time that the complaint was filed against the nonresident corporate defendant in December 1986, with "the critical focus of the inquiry being specifically in December 1986, when Illinois would have attempted to assert jurisdiction over the nonresident corporation." *Reeves*, 171 Ill. App. 3d at 1028.

The court further considered the fact that Mize had derived some sales from Illinois prior to 1982 but that in the years from 1983 to 1986, they did no business in the state. *Reeves*, 171 Ill. App. 3d at 1028. The *Reeves* court determined that, "Since the focus of our analysis is upon late 1986, when Mize became a party to this suit and was served with process, and, since, at that time, Mize had been out of business and had had no contacts with Illinois for approximately three years, we find that Mize was not 'doing business' in Illinois during the relevant time period." *Reeves*, 171 Ill. App. 3d at 1028.

■ Here, the parties entered into the loan agreement on January 16, 1998. On December 31, 1998, defendant surrendered its certificate of authority to conduct business in Illinois. On January 1, 1999, defendant sold its Chicago branch to its subsidiary, ABNY, transferring "all right, title, and interest" in the Chicago office as well as the branch's liabilities. The transfer of power was not cosmetic. ABNY is a separate, fully capitalized corporation, distinct from defendant, that maintains its own books, records, tax returns, and financial statements. ABNY also generates its own business, pays its own bills and legal fees, and funds its operations without any type of capital contributions from defendant. None of ABNY's executives are the same as defendant's and defendant does not participate in any of ABNY's daily decision-making. After the sale of the Chicago branch to ABNY, defendant neither owned real property in Illinois nor had an address, a phone number, bank accounts, employees, agents, or a registered representative for service of process in Illinois. ABNY did not act as defendant's agent in Illinois. Consequently, as of January 1, 1999, defendant ceased to do business in Illinois, either on its own or through its subsidiary. The injury of which plaintiff complains did not

occur until February 11, 2000, over a year after the sale to ABNY. Defendant was made a party to the action in March 2002.

Using the *Reeves* formula, the critical focus of inquiry should be on March 2002, when Illinois would have attempted to assert jurisdiction over defendant. *Reeves*, 171 Ill. App. 3d at 1027. At that time, three years had passed since defendant had either derived income or conducted business in Illinois. Even if the *Reeves* focus was expanded to include the date of the alleged injury the outcome would be the same. In the case at bar, defendant had already ceased to do business in Illinois for over a year at the time of the alleged injury, while, in *Reeves*, the defendant had a small amount of Illinois business at that time. *Reeves*, 171 Ill. App. 3d at 1028.

Therefore, we find that, even though defendant was conducting business in Illinois when the contract was entered into by the parties on January 16, 1998, because defendant had ceased all business in Illinois before defendant was either made a party to the suit and served with process or plaintiff's injury occurred, an Illinois court may not exercise personal jurisdiction over defendant under the "doing business" doctrine. See *Reeves*, 171 Ill. App. 3d at 1027.

We next address whether personal jurisdiction may be asserted on any other basis under the Illinois Constitution and the United States Constitution. A state's power to assert jurisdiction over a nonresident defendant is limited by the fourteenth amendment's due process clause of the United States Constitution. *Maunder*, 102 Ill. 2d at 348.

■ For a state's assertion of personal jurisdiction to comport with federal due process requirements, the defendant must have minimum contacts with the forum state so that traditional notions of fair play and substantial justice are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945); *Maunder*, 102 Ill. 2d at 348. Because the cause of action does not directly arise from defendant's activities in Illinois, defendant's contacts with Illinois must be continuous and systematic. See *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 80 L. Ed. 2d 404, 411, 104 S. Ct. 1868, 1872 (1984).

•5 Where a business contract is involved, several factors are considered to determine whether minimum contacts with the forum state exist. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 85 L. Ed. 2d 528, 545, 105 S. Ct. 2174, 2185 (1985). These factors include who initiated the contract, where the negotiations occurred, where payments were made, and where the decision makers were located. *Burger King*, 471 U.S. at 479, 85 L. Ed. 2d at 545, 105 S. Ct. at 2185. Furthermore, a choice of law provision, although not by itself a sufficient basis to determine jurisdiction, is relevant. *Burger King*, 471 U.S. at 482, 85 L. Ed. 2d at 547, 105 S. Ct. at 2187.

■ Here, the entire formation of the contract entered into between plaintiff and defendant occurred in defendant's London, England, office. All of the negotiations, all of the documentation and all of the meetings occurred in London. Defendant's London office administered the loan and sent the default notice to plaintiff. In addition, the contract includes both a choice of law provision and a choice of forum provision which indicate that any claim which plaintiff has against defendant arising out of or in connection to the contract is to be governed by English law in English courts. No evidence shows that defendant's Chicago branch or ABNY's Chicago branch was ever involved in any part of the contract; nor does the evidence reveal that payment for the loan was to be made in Illinois. Therefore, because defendant lacked the requisite minimum contacts with Illinois, federal due process does not allow Illinois courts to assert personal jurisdiction over defendant.

Furthermore, it would be unreasonable and unfair to require defendant to defend this lawsuit in Illinois. Where the assertion of personal jurisdiction would force the defendant to defend in a foreign forum under a foreign legal system, significant weight must be given to the burden on the defendant when assessing the reasonableness of "stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 114, 94 L. Ed. 2d 92, 105, 107 S. Ct. 1026, 1033 (1987). The court must consider the interests of those nations affected by the assertion of personal jurisdiction as well as the interest of our federal government in its foreign relations policies. *Asahi*, 480 U.S. at 115, 94 L. Ed. 2d at 106, 107 S. Ct. at 1034. These interests are "best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Asahi*, 480 U.S. at 115, 94 L. Ed. 2d at 106, 107 S. Ct. at 1034.

In the case at bar, both plaintiff and defendant are foreign-owned entities without any substantial contacts in Illinois either when the cause of action arose or when the suit was filed. Because of this, Illinois's interest in adjudicating this claim is extremely diminished, especially in light of the heavy burden that would be placed upon defendant to defend a lawsuit here. Therefore, we find it would violate the federal guarantee of due process to assert personal jurisdiction over defendant.

Accordingly, for the reasons set forth above, we affirm the circuit

court's order granting defendant's motion to dismiss the complaint for lack of personal jurisdiction.

Affirmed.

THEIS and QUINN, JJ., concur.