*In re* MARRIAGE OF JEAN FALSTAD, Petitioner-Appellant, and CLARENCE FALSTAD, Respondent-Appellee.

First District (2nd Division)   No. 86—0488

Opinion filed February 10, 1987.

Braiman & Samuels, of Chicago (Jeffrey S. Braiman, of counsel), for appellant.

Johnson, Cusack & Bell, Ltd., of Chicago (Thomas W. Murphy and Brian J. Wanca, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

On November 28, 1984, petitioner-appellant, Jean Falstad, initiated dissolution of marriage proceedings in Cook County against her husband, Clarence Falstad (respondent-appellee herein). The parties had been married since 1954 and separated on July 12, 1984, at which time respondent moved out of the marital domicile. After filing her dissolution petition, petitioner attempted to serve respondent by substitute service in Racine, Wisconsin, where he was allegedly residing. Respondent filed a special and limited appearance to contest the validity of that service, contending, in a motion to quash service filed thereafter, that the Wisconsin address was not his usual place of

abode. The circuit court denied petitioner's attempt to avail herself of discovery on the issue raised in respondent's motion to quash service and thereafter ordered that service be quashed. This appeal followed. We reverse.

Prior to their separation, the parties had established and maintained their marital domicile in Barrington, Illinois. Petitioner initiated these proceedings, and pursuant to her request a special process server, Gerald Yohanna, was appointed by the court for the purpose of serving respondent. Substitute service of process was effectuated on June 28, 1985, by Yohanna's leaving a copy of the summons at 3815 Lighthouse Drive, Racine, Wisconsin, with respondent's niece, Kristin Falstad. That address was respondent's brother's home.

Respondent filed his special and limited appearance on July 26, 1985. Several months later, on October 17, 1985, he filed a motion to quash service, supported by affidavits, contending that the Racine address was not his usual place of abode, that service was defective, and that accordingly the court lacked personal jurisdiction over him. The affidavits filed in support were those of his brother, David Falstad, and his niece, Kristin. In their affidavits, they stated that they had resided at the Racine address for over six years and that to the best of their knowledge, respondent had never lived there or declared it as his usual place of abode or residence. In January 1985, after several indeterminate hearings had been held on the merits of his motion to quash, respondent filed his own affidavit, which was to the same effect as those of his brother and niece.

On November 1, 1985, petitioner orally requested leave to undertake discovery pursuant to Supreme Court Rule 201(*l*) (87 Ill. 2d R. 201(*l*). That matter was presented to Judge Marsalek, who granted the request and entered an order accordingly. Thereafter, petitioner filed a notice of deposition, seeking to interrogate respondent, among others. After respondent refused to comply with that notice, petitioner filed a motion requesting the imposition of sanctions.

In opposition to the motion to quash, petitioner filed three items in support of her allegation that respondent's abode was in Racine. First, petitioner presented the affidavit of the postmistress of Barrington, Illinois, who averred that she had searched her records and located a change-of-address card filled out by respondent, with an effective date of November 29, 1984. We note parenthetically that this was the day after petitioner initiated divorce proceedings. In that change-of-address card, respondent requested that all of his mail be forwarded to 3815 Lighthouse Drive, Racine, Wisconsin. In another affidavit, the postmaster of Racine stated that he had searched his

records and could not locate any change-of-address form completed by respondent to alter the earlier forwarding address. In his own affidavit, respondent asserted that he traveled extensively and that he used the Racine address merely as a matter of convenience in order that correspondence could reach him easily. Finally, petitioner presented evidence that James Nardini, a car rental agent in Des Plaines, Illinois, would testify that respondent entered into a car rental agreement in November 1985 in which he represented that his address was 3815 Lighthouse Drive in Racine. Notably, that agreement was executed after substitute service had been effectuated and after respondent filed his motion to quash service and supporting affidavits alleging that he did not reside in Racine.

These matters were presented to Judge Jorzak, who held a number of hearings thereon. On December 19, 1985, Judge Jorzak held that the motion to quash took precedence over all discovery matters, succinctly stating "I will tell you this comes first. No service, no sanctions. You know better than that." On December 31, 1985, petitioner requested reconsideration of that decision, noting that Judge Marsalek had already authorized Rule 201(*l*) discovery. The court again denied the request, this time stating:

> "Your discovery is a form of harassment. You are attempting to do what you can't do through the front door. *** I oppose your tactics. I think it is something that you ought to discontinue. You are absolutely incorrect."

The court's ruling was predicated on respondent's argument that if he complied with the discovery notice and appeared for a deposition, petitioner would simply use that opportunity to serve him personally.

On February 3, 1986, the court ruled on the motion to quash. The court stated that "the only factor" it was presented with to contravene respondent's affidavits was the change of address card and that he was not persuaded by that fact. The court held that it lacked *in personam* jurisdiction over respondent and accordingly ordered that service be quashed. This appeal followed.

Initially, we note that there can be no question but that the circuit court had jurisdiction to hear the matters raised in the dissolution petition. The Code of Civil Procedure (the Code) provides:

> "Any person, whether or not a citizen or resident of this State, who in person *** does any of the acts hereinafter enumerated, thereby submits such person *** to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>                          * * *

(5) With respect to actions of dissolution of marriage and legal separation, the maintenance in this State of a matrimonial domicile at the time this cause of action arose or the commission in this State of any act giving rise to the cause of action." (Ill. Rev. Stat. 1985, ch. 110, par. 2—209(a)(5).)

As previously noted, the matrimonial domicile of the parties to this suit was in Barrington; petitioner still resides there. The Code thus clearly gave the circuit court "long-arm" jurisdiction over the matters raised in the dissolution petition. The question on appeal is the court's jurisdiction over respondent personally, based on the adequacy of the substitute service.

Such service is proper according to the long-arm statute under the provisions of section 2—203(a)(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—203(a)(2)). That section provides that service may be accomplished by leaving a copy of the summons at the usual place of abode of the defendant with a member of the family of the age of 13 or over. The key area of dispute herein was whether the Racine address was respondent's usual place of abode.

In deciding this issue, we believe that the dispositive question is whether the circuit court erred in denying petitioner's attempt to obtain discovery with respect to the location of respondent's abode. Supreme Court Rule 201(*l*) states:

"(*l*) Discovery Pursuant to Special Appearance. Discovery shall be permitted on the issues raised in a special appearance filed pursuant to section 2—301 of the Code of Civil Procedure, provided such discovery is limited to the court's jurisdiction over the person of the defendant." (87 Ill. 2d R. 201(*l*).)

Here, respondent's appearance was filed pursuant to section 2—301, and petitioner sought discovery relative to that appearance.

This provision has apparently never been construed by our courts. The committee comments in connection with Rule 201(*l*) provide:

"Paragraph (*l*) was added in 1981 to negate any possible inference from the language of section 20 of the Civil Practice Act [now section 2—301 of the Code of Civil Procedure] that participation in discovery proceedings after making a special appearance to contest personal jurisdiction constitutes a general appearance and waives the jurisdictional objection, so long as discovery is limited to the issue of personal jurisdiction." (87 Ill. 2d R. 201(*l*), Committee Comments.)

What is manifest from the committee comments is the fact that the rule seeks to balance two important interests.

■ On the one hand, the rule recognizes the general purpose of

discovery and the trial process. A trial is, of course, designed to arrive at the truth underlying the dispute. In the case at bar, we are of course dealing with a pretrial hearing on the question of jurisdiction; the operative principle of truth finding remains extant. Discovery is a tool designed to further the ends of justice by allowing the parties to explore the areas of controversy prior to trial, to eliminate surprise at trial, and to enable counsel to better evaluate their cases. (See *People v. Benhoff* (1977), 51 Ill. App. 3d 651, 366 N.E.2d 359; *Biehler v. White Metal Rolling & Stamping Corp.* (1975), 30 Ill. App. 3d 435, 333 N.E.2d 716.) These interests apply equally to pretrial hearings such as that in the instant case and strongly favor allowing each party access to facts known to his opponent, with a view to distilling out irrelevant or uncontested matters and to establishing the ultimate facts and truth of the controversy.

■ On the other side of the scale is the purpose of the special appearance. Where a defendant such as respondent herein is haled before the court through the medium of the court's "long-arm" jurisdiction under section 2—203 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—203), he is permitted to challenge the court's authority over his person by entering a special and limited appearance. After doing so, a defendant is confined to contesting only the question of jurisdiction; his participation in other aspects of the trial destroys the limitation of his appearance and waives the jurisdictional objection. See, *e.g., J. C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, 449 N.E.2d 188.

■ The rule strikes a balance between these conflicting interests by allowing the party asserting jurisdiction to avail itself of the tools of discovery while not penalizing the party contesting jurisdiction for complying with discovery. The rule accomplishes that end by limiting discovery solely to the issues raised by the special appearance, thus affording the circuit court a more complete picture of the facts and allowing for a more informed decision in that forum.

■ In this regard, the court's decision herein to address the matters raised in the motion to quash before allowing petitioner to complete discovery conflicted with the rule. It placed the cart before the horse. While the trial court has broad discretion in supervising discovery (see 87 Ill. 2d R. 201(c); *Harris Trust & Savings Bank v. Joanna-Western Mills Co.* (1977), 53 Ill. App. 3d 542, 368 N.E.2d 629), that discretion should be exercised while always keeping in mind the goal of promoting the ascertainment of truth.

Here, the court's refusal to permit discovery created an informational vacuum, and the court then proceeded to rule within that vac-

uum. The court noted that the "only factor" it had been presented with to traverse respondent's affidavits was the change-of-address card (a statement which ignored the existence of the car rental agreement, we note); the lack of evidence was created by the court's ruling on discovery. It is anomalous to thwart the discovery process and then cite the absence of evidence in ruling on a contested matter. To the extent that the circuit court believed that it was required to consider the jurisdictional question before permitting limited discovery, Rule 201(*l*) is in conflict with that view and controls the issue. It is precisely the sort of situation we have in this case that the Rule was designed to address and resolve, especially since respondent's in-court representations were completely at variance with his statements out of court.

■ In reaching this conclusion, we do not quarrel with the court's concern that discovery not be used as a form of harassment or as a guise to accomplish indirectly what cannot be done directly. It was for this reason that the discovery rules explicitly provide:

> "[t]he court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." (87 Ill. 2d R. 201(c)(1).)

In the context of the case *sub judice*, the circuit court could easily have entered a protective order *sua sponte*, or on motion of respondent, to answer that concern. This procedure would have insured against harassment or deceit while fostering the purposes underlying discovery. Respondent did not make that request, and the court's decision to deny any inquiry into the question of respondent's abode foreclosed proper inquiry. We believe that the court abused its discretion in so ruling.

If the court's decision was intended as a sanction against petitioner based on her alleged ulterior motives (see 103 Ill. 2d R. 219(c)), we deem it to be unwarranted. (See *White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 1028, 398 N.E.2d 24 ("in determining which orders or sanctions to impose under Supreme Court Rule 219(c), the trial court must seek not to impose punishment but rather to accomplish the object of discovery. [Citations.] Sanctions are to be imposed only when the noncompliance is unreasonable, and the order entered must be just. [Citations.] A just order is one which, to the degree possible, insures both discovery and trial on the merits").) The circuit court's comments herein clearly indicate that the court viewed petitioner's attempt to obtain discovery as contumacious, and the de-

nial of discovery was clearly intended as punishment for that conduct.

Moreover, the court's decision was contrary to well-established precedent. Judge Marsalek, a judge of equal rank and dignity and with jurisdiction coordinate to that of Judge Jorzak, had expressly granted petitioner's request for discovery. It was not Judge Jorzak's prerogative to review the wisdom of Judge Marsalek's decision. In many respects, this case is similar to the case of *Balciunas v. Duff* (1983), 94 Ill. 2d 176, 446 N.E.2d 242. In that case, Judge Bieschke, after several hearings arising out of discovery proceedings, indicated that he would not issue a protective order on behalf of defendant to preclude plaintiff from disclosing certain alleged trade secrets of defendant. Defendant sought reconsideration of that decision and that request was brought before Judge Duff, who succeeded Judge Bieschke. Judge Duff issued such a protective order. Plaintiff thereupon sought *mandamus* to compel Judge Duff to expunge that order.

The Illinois Supreme Court, after stating that the purpose underlying discovery was the expeditious and final determination of controversies, and after commenting on the broad discretion entrusted to the trial judge to supervise discovery, stated:

> "[O]nce the court has exercised its discretion, that ruling should not be reversed by another member of the court simply because there is disagreement on the manner in which that discretion was exercised. Rather, a successor judge, before whom the case has been assigned, should revise or modify previous discovery rulings only if there is a change of circumstances or additional facts which warrant such action." (94 Ill. 2d 176, 188, 446 N.E.2d 242.)

In the present case, Judge Jorzak was not presented with any change of circumstances or additional facts which would have allowed him to modify Judge Marsalek's order. Indeed, it appears that Judge Jorzak did not modify or revise that order; rather, he effectively vacated it by ignoring it. This result is precluded by the decision in *Balciunas*, and accordingly must itself be vacated.

In summation, we hold that where a special and limited appearance has been entered for the purpose of contesting the circuit court's personal jurisdiction over defendant, and where plaintiff requests discovery on the issues raised in that appearance, the trial court, pursuant to the provisions of Supreme Court Rule 201(*l*), must allow that inquiry. The court may, on its own motion or on motion of the parties, issue such orders as are necessary and reasonable to protect the defending party against misuse of discovery, and must, under Rule 201(*l*), limit the inquiry to those matters raised by the motion to quash.

Accordingly, we vacate the circuit court's order quashing service of process, and remand the cause for further proceedings in conformity with this opinion.

Order vacated and cause remanded.

STAMOS and HARTMAN, JJ., concur.