NO. 4-04-0343

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

COMMUNITY MERCHANT SERVICES, INC., an Illinois Corporation, 

          Plaintiff-Appellant and                 Cross-Appellee, 

          v.

SAMUEL K. JONAS, Individually; CASH RESOURCES, INC., a Colorado Corporation; and MEDIACHOICETV.COM, INC., a Colorado Corporation Doing Business as CONVENIENTV.COM,

          Defendants-Appellees and                Cross-Appellants.

)

)

)

)

)))))

)

)

)

Appeal from

Circuit Court of

McLean County

No. 02L15

Honorable

Kevin P. Fitzgerald, 

Judge Presiding.

_________________________________________________________________

JUSTICE MYERSCOUGH delivered the opinion of the court:

In January 2002, in McLean County, Illinois, plaintiff, Community Merchant Services, Inc. (Community), filed a complaint against defendants, Samuel K. Jonas, individually, Cash Resources, Inc. (Cash Resources), and MediachoiceTV.com, Inc., doing business as ConvenienTV.com (CTV).  Community's complaint alleged breach of contract and alter-ego claims.  An amended complaint filed in August 2002 further alleged breach of fiduciary duty, fraudulent inducement, conversion, and fraud.  

Defendants filed motions to dismiss based on lack of personal jurisdiction and the doctrine of 
forum
 
non
 
conveniens
.    The trial court found personal jurisdiction existed over all defendants but concluded the complaint should nevertheless be dismissed on 
forum
 
non
 
conveniens
 
grounds.  

Community appeals, arguing the trial court abused its discretion in dismissing its complaint pursuant to the doctrine of 
forum
 
non
 
conveniens
.  Defendants cross-appeal, contending the court abused its discretion in finding personal jurisdiction over defendants Jonas and Cash Resources.  We affirm in part and reverse in part.  

I. BACKGROUND

Community is an Illinois corporation with its principal place of business in Bloomington, Illinois.  It is an independent service operator in the automated teller machine (ATM) industry and places ATMs throughout Illinois.  Community developed and owns the Kahuna Media Network (Kahuna), a business also in the ATM industry. 

MediachoiceTV.com is a Colorado corporation doing business as CTV.  CTV is in the business of providing digital media and advertising services utilized in connection with point-of-sale advertising.  Cash Resources is also a Colorado corporation and is in the business of providing data processing and other services for ATMs.  Jonas is the president and majority shareholder of CTV and was the president and sole shareholder of Cash Resources until the sale of its assets in August 2002 to an entity known as eFunds, Inc. 

In October 2000, Community and CTV began discussing the potential sale of Kahuna by Community to CTV.  As a result of these discussions, three documents were drafted and signed by the parties.  First, in October 2000, a disclosure agreement was entered into and signed by Community and defendant Jonas in his capacity as president of both CTV and Cash Resources.  Second, in December 2000, a temporary letter agreement, sometimes referred to by the parties as a letter of intent, was entered into and signed by the parties.  Finally, in April 2001, an addendum was signed by the parties and added to the letter agreement.  The addendum was to serve as the parties' binding agreement.  None of the agreements contained a choice-of-forum provision. 

Paragraph seven of the addendum incorporated a breakup provision, providing for reimbursement to CTV in the event of impossibility of performance due to "catastrophic circumstances beyond remedy or repair."  CTV claims it eventually attempted to  invoke the breakup provision, contending "catastrophic circumstances" had occurred.  

In January 2002, Community brought suit in McLean County, Illinois, against CTV, Jonas, and Cash Resources, alleging defendants defaulted on their agreement to purchase Kahuna.  Community specifically alleged a breach-of-contract claim against CTV and single alter-ego claims against both Jonas and Cash Resources.  In August 2002, an amended complaint was filed.  The amended complaint further alleged breach-of-fiduciary-duty, fraud, and conversion claims against Jonas and a fraudulent-inducement claim against both Jonas and Cash Resources.  

In February 2002, 17 days after Community filed its original complaint, CTV filed suit against Community in Arapahoe County, Colorado.  CTV, in part, sought 
a declaratory judgment concerning the existence of a "catastrophic circumstance beyond remedy or repair," entitling it to invoke paragraph seven of the addendum.  Community filed motions to quash service and to dismiss the Colorado complaint based upon lack of jurisdiction and 
forum
 
non
 
conveniens
.  Community's motions were denied.  The Colorado court, however, stayed the action pending a final disposition in the Illinois suit.  

In March 2002, in the Illinois suit, CTV filed a general appearance and a motion to dismiss based upon 
forum
 
non conveniens
.  In the same month, defendants Jonas and Cash Resources filed special and limited appearances and motions to quash service due to lack of personal jurisdiction.  Jonas and Cash Resources contended they were Colorado residents with an absence of Illinois contacts and an absence of actions undertaken on their behalf in connection with the current dispute. 

In July 2003, Jonas traveled to Bloomington, Illinois, and was personally served with process.  His stated reason for coming to Illinois was to assist his counsel in preparing for, and taking the deposition of Frank Lunn, the president of Community.  After leaving Bloomington, Jonas traveled to Chicago for the deposition of nonparty witness Andrew Yonke, again stating his purpose was to provide factual assistance to counsel.  Jonas also moved to quash this service as improper.  

In December 2003, the trial court denied the jurisdictional motions of Jonas and Cash Resources.  The court initially found personal jurisdiction over Jonas pursuant to him having been personally served in Illinois.  See 735 ILCS 5/2-209(b)(1) (West 2002).  The court next found two sources of personal jurisdiction with respect to Cash Resources.  The court first found Cash Resources was generally doing business in Illinois (735 ILCS 5/2-209(b)(4) (West 2002)) and then concluded that the present cause of action arose out of Cash Resources's transactions of business within Illinois (735 ILCS 5/2-209(a)(1) (West 2002)).  The court reserved ruling on CTV's motion to dismiss based upon 
forum
 
non
 
conveniens
, pending the filing of similar motions by Jonas and Cash Resources.

In January 2004, Jonas and Cash Resources both filed motions to dismiss on 
forum
 
non
 
conveniens
 
grounds.  In April 2004, at a hearing on all three motions, the trial court found Colorado to be the most appropriate forum for litigation and granted the motions to dismiss. 
 

These appeals followed.  

II. ANALYSIS

A. 
Forum
 
Non
 
Conveniens

On appeal, Community argues the trial court erred in granting the motions to dismiss on 
forum
 
non
 
conveniens
 
grounds.  See 735 ILCS 5/2-619(a)(3) (West 2002).  Specifically, Community argues the court failed to give deference to plaintiff's choice of forum and defendants failed to meet their burden of demonstrating the balance of factors strongly favored dismissal of Community's Illinois complaint.  

A trial court's decision involving a 
forum
 
non
 
conveniens
 
motion lies within its sound discretion and will only be reversed on appeal if the court abused its discretion in balancing the relevant factors.  
Dawdy v. Union Pacific R.R. Co.
, 207 Ill. 2d 167, 176-77, 797 N.E.2d 687, 696 (2003).
  In 
Dawdy
, the Supreme Court of Illinois stated that when more than one potential forum exists for an action, a court may 
invoke the equitable doctrine of 
forum
 
non
 
conveniens
 
to determine the most appropriate forum.  
Dawdy
, 207 Ill. 2d at 171, 797 N.E.2d at 693.  When applying the doctrine, a court must balance both private- and public-interest factors to determine the appropriate forum in which the case should be tried.  
Dawdy
, 207 Ill. 2d at 172, 797 N.E.2d at 693.  

Relevant private-interest factors to be considered in connection with the doctrine of 
forum
 
non
 
conveniens
 
include the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process; the cost to obtain attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive.  
Dawdy
, 207 Ill. 2d at 172, 797 N.E.2d at 693.  Additionally, relevant public-interest factors include the administrative difficulties in congested venues, the unfairness of imposing jury duty upon individuals with no connection to the litigation, and the interest in having local controversies decided locally.  
Dawdy
, 207 Ill. 2d at 173, 797 N.E.2d at 693.  

A plaintiff's right to select the forum is substantial, and unless the factors weigh strongly in favor of transfer, the plaintiff's choice of forum should rarely be disturbed.  
Dawdy
, 207 Ill. 2d at 173, 797 N.E.2d at 694.  Further, if the plaintiff's chosen forum is its home forum, that choice will be given substantial deference.  
Skoien v. Utility Mechanical Contractors, Inc.
, 207 Ill. App. 3d 79, 84, 565 N.E.2d 286, 288 (1990). A plaintiff’s choice of forum, however, receives less deference when neither the plaintiff’s residence nor the site of the accident or injury is located in the chosen forum.  
Griffith v. Mitsubishi Aircraft International, Inc.
, 136 Ill. 2d 101, 106, 554 N.E.2d 209, 211 (1990).  

In the instant case, Community is an Illinois corporation, and its principal place of business is Bloomington, Illinois.  Bloomington is located in McLean County where plaintiff filed the underlying lawsuit.  Clearly, plaintiff’s chosen forum is its home forum and should be afforded great weight.  The trial court, however, awarded no deference to plaintiff’s home forum choice.  Specifically, the court stated that because defendant CTV had filed its suit in Colorado, CTV was also a "plaintiff" for the purpose of the 
forum
 
non
 
conveniens
 determination.  Because each party’s home forum choice received an equal amount of deference, the court concluded that neither parties’ choice of forum was entitled to a preferential treatment. 

Here, the trial court’s conclusion was not only an abuse of discretion but was also clearly erroneous.  As stated above, generally, a reviewing court will not reverse a trial court's 
forum
 
non
 
conveniens
 determination
 
unless the court abused its discretion in balancing the relevant factors.  
Dawdy
, 207 Ill. 2d at 176-77, 797 N.E.2d at 696.
  Moreover, in this case, the trial court’s designation of CTV as a "plaintiff" in the underlying lawsuit is a question of law and is subject to 
de
 
novo
 review.  
Clemons v. Mechanical Devices Co.
, 202 Ill. 2d 344, 352, 781 N.E.2d 1072, 1078 (2002)

The record indicates that defendant CTV filed a separate law suit in Colorado and not a counterclaim in the Illinois suit.  Therefore, CTV’s role in the underlying suit is a defendant, and not, as the trial court found, a second "plaintiff."  No support exists for the court’s proposition that a defendant’s filing of a later lawsuit entitles the defendant to the consideration afforded to a plaintiff in the initial lawsuit in another state.  More importantly, the trial court’s holding would lead to absurd results.   As the Supreme Court of Illinois stated in 
First National Bank v. Guerine
, 198 Ill. 2d 511, 521, 764 N.E.2d 54, 61 (2002), "the plaintiff is entitled to some deference in choosing a forum; the battle over forum begins with the plaintiff’s choice already in the lead."  The trial court’s holding in question effectively eliminated any "deference" or "lead" that a plaintiff enjoys because any defendant can file a separate lawsuit in its home forum and claim that its choice should be given the same weight.  Because the trial court incorrectly applied the above deferential factor, we reverse the court’s finding and remand the cause for a new test that affords plaintiff’s home forum the weight that Illinois law prescribes.  

B. Personal Jurisdiction 

On cross-appeal, defendants argue the trial court erred in finding Jonas and Cash Resources subject to personal jurisdiction within the State of Illinois.  Specifically, defendants argue personal service on Jonas is improper because he was within the state solely to assist counsel with discovery that related to the Illinois court's jurisdiction.  Defendants also argue Cash Resources is a Colorado resident with an absence of Illinois contacts and an absence of any actions undertaken on its behalf in connection with the dispute giving rise to this litigation.

When a trial court has heard no testimony and determined jurisdiction solely on the basis of documentary evidence, a 
de
 
novo
 standard of review applies.  
Gaidar v. Tippecanoe Distribution Service, Inc.
, 299 Ill. App. 3d 1034, 1039-40, 702 N.E.2d 316, 319 (1998).  Further, the plaintiff has the burden of establishing a 
prima
 
facie
 basis for the exercise of personal jurisdiction; however, the plaintiff's 
prima
 
facie
 case can be overcome by a defendant's uncontradicted evidence that defeats jurisdiction.  
Gaider
, 299 Ill. App. 3d at 1040-41, 702 N.E.2d at 320. 

1. 
Personal
 
Jurisdiction
 
Over
 
Jonas

On cross-appeal, defendants argue the trial court erred in finding Jonas subject to personal jurisdiction as a result of him being personally served within Illinois.  Defendants argue Jonas was present in Illinois solely in connection with discovery pertaining to the issue of the court's jurisdiction over the person of the defendant, and thus service of process was improper.  See 735 ILCS 5/2-301 (West 2002); Official Reports Advance Sheet No. 8 (April 17, 2002), R. 201(
l
), eff. July 1, 2002.

An Illinois court may exercise jurisdiction in any action against any person who is a natural person present within this state when served.  See 735 ILCS 5/2-209(b)(1) (West 2002).  A trial court may, on its own initiative, or on the motion of any party, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression.  See 166 Ill. 2d R. 201(c)(1).  A trial court may issue a protective order where necessary and reasonable, prohibiting service on a party to protect that party from the misuse of discovery.  
In re Marriage of Falstad
, 152 Ill. App. 3d 648, 655, 504 N.E.2d 908, 913 (1987)   

Defendants cite two cases in support of their argument that personal service of process on Jonas was improper.  The first, 
Falstad
, is a divorce case in which the wife attempted to serve her husband by substitute service with a petition for dissolution of marriage.  
Falstad
, 152 Ill. App. 3d at 699, 504 N.E.2d at 909.  The husband filed a special and limited appearance to contest the service.  The wife then filed a notice of deposition for the purpose of discovery on the issue of the court's jurisdiction over her husband.  See Official Reports Advance Sheet No. 8 (April 17, 2002), R. 201(
l
), eff. July 1, 2002.  The husband, however, refused to comply, contending that his wife would use the opportunity to effect personal service upon him.  
Falstad
, 152 Ill. App. 3d at 649-50, 504 N.E.2d at 909-10.  The First
 District held the trial court could easily have entered a protective order to respond to the concern that discovery not be used as a form of harassment or as a guise to accomplish indirectly what cannot be done directly.  
Falstad
, 152 Ill. App. 3d at 654, 504 N.E.2d at 912.  

Defendants next cite 
Harris v. Wally's World of Fun, Ltd.
, 279 Ill. App. 3d 61, 62-63, 664 N.E.2d 324, 325 (1996), in which the defendant filed a motion for entry of a protective order to prohibit the plaintiff from attempting to serve him during a hearing on the defendant's motion to quash.  The trial court concluded that a motion for a protective order constituted a general appearance and thus waived any objections to jurisdiction.  
Harris
, 279 Ill. App. 3d at 63, 664 N.E.2d at 326.  The First
 District reversed and held a motion for a protective order preventing personal service does not waive the issue of jurisdiction.  
Harris
, 279 Ill. App. 3d at 66, 664 N.E.2d at 327. 

Defendants contend 
Falstad
 and 
Harris
 stand for the proposition that a party may enter the State of Illinois for the purpose of discovery relating to a court's jurisdiction without being subject to personal service of process.  However, their interpretation is incorrect.  Correctly read, these cases stand for the proposition that a party who enters the state for discovery relating to a court's jurisdiction may not be subjected to personal service, so long as a protective order has been granted prohibiting such service from taking place.  

The distinction between defendants' interpretation and that of the trial court, and this court, relates to the entry of a protective order 
before
 a party enters the state.  The supreme court rules state a protective order may be requested by either that court upon its own motion or by a motion from one of the parties.  See 166 Ill. 2d R. 201(c)(1).  In both 
Falstad
 and 
Harris
, protective orders were sought and received before entering into the state.  In this case, however, no such order was sought by defendant Jonas.  Therefore, Jonas was subject to personal service of process upon entering Illinois. 

A review of the record indicates personal service on defendant Jonas was proper in this instance.  A protective order was needed to give Jonas immunity from personal service, and since one was not in place, service was proper.  The trial court therefore did not err in its determination that personal jurisdiction exists in Illinois over defendant Jonas.  

2. 
Personal
 
Jurisdiction
 
Over
 
Cash
 
Resources

Defendants next argue on cross-appeal that the trial court erred in finding Cash Resources subject to personal jurisdiction within the State of Illinois.  Specifically, defendants contend Cash Resources was neither doing business in Illinois, nor was it transacting business within the state.  They argue an absence of both Illinois contacts and actions undertaken on Cash Resources's behalf in connection with the current cause of action.

In determining whether a basis for personal jurisdiction over a nonresident defendant exists, the trial court may consider a plaintiff's complaint and any affidavits submitted by the parties.  
Viktron Ltd. Partnership v. Program Data, Inc.
, 326 Ill. App. 3d 111, 116, 759 N.E.2d 186, 192 (2001).  An affidavit satisfies the rule governing affidavits submitted in connection with challenges to personal jurisdiction if, from the document as a whole, it appears the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents.  
Khan v. Van Remmen, Inc.
, 325 Ill. App. 3d 49, 56, 756 N.E.2d 902, 909 (2001).  

When an affidavit consists of mere conclusions, rather than evidentiary facts, it does not comply with the rule governing affidavits and does not provide a sufficient basis to support personal jurisdiction.  
Khan
, 325 Ill. App. 3d at 56, 756 N.E.2d at 909.  Further, conflicts in the affidavits and pleadings must be resolved in favor of the plaintiff for purposes of determining whether a 
prima
 
facie
 case for personal jurisdiction has been established.  
Khan
, 325 Ill. App. 3d at 56, 756 N.E.2d at 909.  

a. Doing Business

An Illinois court may exercise jurisdiction over any foreign corporation found to be doing business within the state.  See 735 ILCS 5/2-209(b)(4) (West 2002).  No comprehensive test has been stated for determining what activities amount to doing business; however, if a corporation is conducting business in Illinois of such character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the state, it may be found to be doing business in Illinois.  
Hendry v. Ornda Health Corp.
, 318 Ill. App. 3d 851, 853, 742 N.E.2d 746, 748 (2000).  Further, business activity within the state must be carried on with a fair measure of permanence and continuity, and such determinations are made on a case-by-case basis.  
Hendry
, 318 Ill. App. 3d at 853, 742 N.E.2d at 748-49.

To support a finding that Cash Resources was doing business in Illinois, Community relies, in part, on the affidavit of Andrew Yonke, a former employee of both Community and defendants.  In his affidavit, Yonke alleged he was paid by CTV but did considerable work in Illinois for Cash Resources, unrelated to his position at CTV.  Specifically, Yonke states he obtained numerous ATM contracts for Cash Resources.  He further stated the lease for his apartment in Illinois was in the name of Cash Resources.  

Information in the record contains additional allegations made by Community.  Community contends Cash Resources has leased or sold hundreds of ATMs to businesses in Illinois and provides maintenance, servicing, and processing for those ATMs.  Community also alleges Cash Resources has employees present within the State of Illinois and has leased space from businesses to conduct business in Illinois.

Defendants answer Community's allegations by arguing that Cash Resources's Illinois activities were unrelated to Community and were very limited in scope and time.  They point to the 
Hendry
 case as being factually similar to this case. 
 The court in 
Hendry
 concluded the majority of the plaintiff's allegations against the foreign corporate defendant pointed to nothing more than the advertising of services in Illinois, and therefore, the defendant was not doing business in Illinois.  
Hendry
, 318 Ill. App. 3d at 854, 742 N.E.2d at 749.  

The trial court in this case noted 
Hendry
 and found it articulated the correct standard to be applied.  However, the court concluded the facts of this case differ from those in 
Hendry
, such that a different outcome was warranted.  After looking at the information presented, the court found Cash Resources was doing business in Illinois and personal jurisdiction existed.  Factors it considered include the disclosure agreement entered into by Cash Resources, space leases and processing agreements in Illinois, Yonke's apartment lease, and the activities of Yonke in Illinois on behalf of Cash Resources. 

The record on appeal and the applicable law support the trial court.  The information presented shows Cash Resources has sold or leased ATMs to businesses throughout Illinois and provided services for those ATMs.  A sample processing agreement from Cash Resources shows, upon entering into such an agreement, it agreed to reprogram ATMs, perform maintenance or system improvements, and provide necessary data-processing services.  Further, the duration of the sample processing agreement was for a period of five years, with automatic renewal for successive five-year periods.  

Further, the affidavit of Yonke is based on personal knowledge supporting the conclusion that Cash Resources was doing business in Illinois.  In Yonke's affidavit, he stated he was present in Illinois and doing business on behalf of Cash Resources and Cash Resources signed his apartment lease.  These allegations, along with others presented by Community, lead to the conclusion that Cash Resources subjected itself to the laws of Illinois and could reasonably have anticipated being brought into court in this state.

The record shows that Cash Resources was in fact doing business within the State of Illinois.  The activities of Cash Resources show a fair measure of permanence and continuity such that it should be subjected to personal jurisdiction in Illinois. Further, Cash Resources subjected itself to the laws of this state by signing Yonke's apartment lease and allowing Yonke to do business in Illinois on its behalf.  Therefore, the trial court did not err in finding Cash Resources was doing business in Illinois. 

b. Transacting Business 

An additional way in which a corporation may be subjected to personal jurisdiction in Illinois is under the state's long-arm statute.  Under that statute, if a defendant transacts business in Illinois and the cause of action at issue arises from that activity, personal jurisdiction exists.  See 735 ILCS 5/2-209(a)(1) (West 2002).  To meet the requirements of the Illinois long-arm statute, a plaintiff must show the defendant transacted business in Illinois, the cause of action arose from this transaction of business, and personal jurisdiction is consistent with due process.  
Khan
, 325 Ill. App. 3d at 57, 756 N.E.2d at 910.  

A defendant transacts business in the state within the meaning of the long-arm statute when substantial performance of contractual duties is to be rendered in the state or when the defendant invokes the benefits and protections of state law in the contractual relationship.  
Khan
, 325 Ill. App. 3d at 57, 756 N.E.2d at 910.  Further, a plaintiff's claim "arises from" the transaction of business for purposes of the long-arm statute if it lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of state courts.  
Khan
, 325 Ill. App. 3d at 57, 756 N.E.2d at 910.  

Factors relevant to whether a transaction amounts to transacting business for purposes of the Illinois long-arm statute include who initiated the transaction, where the contract was entered into, and where performance of the contract was to take place; however, while none of these factors is controlling, each is significant.  
Khan
, 325 Ill. App. 3d at 57, 756 N.E.2d at 910.  Only the conduct of the defendant at issue can form the basis for jurisdiction.  
Poplar Grove State Bank v. Powers
, 218 Ill. App. 3d 509, 518, 578 N.E.2d 588, 595 (1991). Here, the trial court found the signing of the disclosure agreement by Cash Resources, the apartment lease for Yonke in the name of Cash Resources, activities of Yonke in Illinois on behalf of Cash Resources, space leases, and processing agreements were all related to the contract at issue and lie in the wake of the transaction that is the source of the cause of action.  The court also stated it found the 
Hendry
 case instructive in this context as well.  It noted that while the 
Hendry
 court determined the defendant's activities did not rise to the level of doing business, it did find that arrangements made by the defendant for a limousine to pick up the plaintiff and transport her to the State of Iowa was sufficient for purposes of the long-arm statute.  
Hendry
, 318 Ill. App. 3d at 855, 742 N.E.2d at 749-50. The evidence here establishes personal jurisdiction over Cash Resources pursuant to the Illinois long-arm statute.  In this case, Community's president was approached in Illinois by Jonas, the president of Cash Resources and CTV, concerning the acquisition of Kahuna.  The parties entered into a disclosure agreement that was signed in Illinois by Community's president and in Colorado by Jonas in his capacity as president of both CTV and Cash Resources.  The parties continued to meet and communicate by phone, fax, and email, and performance under the disclosure agreement took place in both Illinois and Colorado when each party kept protected information confidential.  Further, the disclosure agreement was a precursor to the final agreement between Community and CTV, in that if it had not been executed, the final agreement would not have been entered into.   Other information in the record shows a press release, attached to Community's amended complaint, that was issued in Englewood, Colorado, and Bloomington, Illinois, and which described Kahuna as being acquired by Cash Resources.  Further, nonparty witness Yonke was a key employee of Kahuna whom CTV agreed to employ, after its acquisition of Kahuna, as its representative in the Chicago area.  In his affidavit, Yonke alleges he was present in Illinois and doing business for both CTV and Cash Resources.  Specifically, Yonke stated during his employment with CTV he obtained numerous ATM contracts for Cash Resources.  This information shows that Cash Resources transacted business within the state of Illinois that is directly related to the contract at issue in the current cause of action. The trial court did not err in finding personal jurisdiction over Cash Resources pursuant to the Illinois long-arm statute.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment insofar as it confirms the existence of personal jurisdiction over defendants and reverse insofar as it grants defendants' motions to dismiss on 
forum
 
non
 
conveniens
 grounds.
 

Affirmed in part and reversed in part; cause remanded.

COOK, P.J., and APPLETON, J., concur.